■ GREGORY COGSWELL, an Infant, by DONALD W. COGSWELL et al., His Parents and Guardians, Respondent, v GLEN CHAPMAN et al., Respondents, and WILLIAM EICHNER, Doing Business as EYE CARE ASSOCIATES, Appellant. [672 NYS2d 460] —Spain, J. Appeal from an order of the Supreme Court (Dawson, J.), entered February 27, 1997 in Clinton County, which denied a motion by defendant William Eichner for summary judgment dismissing the complaint against him.

On August 31, 1991, plaintiff, an infant, suffered an eye injury in a fishing accident. Plaintiff was brought to the emergency room at defendant Moses Ludington Hospital (hereinafter the hospital) by his aunt and was first examined by Andy Gorton, a physician's assistant, who stated that plaintiff might need to see a specialist. Thereafter, Gorton was advised by defendant Glen Chapman, an emergency room physician, to contact defendant William Eichner (hereinafter defendant), an ophthalmologist who served in the capacity of a courtesy/consulting physician at the hospital. Although defendant questioned and advised Gorton over the phone, he did not want to personally examine plaintiff. The aunt testified at an examination before trial that Chapman then examined plaintiff, gave him a prescription for eye drops and told him to take Tylenol or Advil for pain. Chapman stated that he had no direct contact with defendant but rather got his information through Gorton, who spoke with defendant while plaintiff was still present in the emergency room. Although Chapman was surprised that defendant did not want to see plaintiff that day, Chapman did not call to discuss this with defendant.

In defendant's examination before trial, he testified that he had been on the courtesy/consulting staff since 1977 and in that capacity answered questions of emergency room staff over the phone. He did not, however, see patients at the emergency room and he never received payment for any courtesy consulta-

tion. Although he rendered what he characterized as an informal opinion to Gorton over the phone, defendant stated that he did not see, examine, take a history of or treat plaintiff on the date in question. Defendant also stated that during the conversation with Gorton he asked if the pressure of the eye had been checked, he discussed treatment management which would involve follow-up visits which would most likely require a visit to his office, and he told Gorton that he should be notified if plaintiff experienced a re-bleed or acute distress. Defendant further stated that he told Gorton to avoid aspirin and aspirin-like products and suggested that plaintiff be put on a minimal activity restriction. Defendant stated that he did not feel it necessary to see plaintiff due to his comfort with Gorton's response to his recommendations. On September 3, 1991, after returning to the hospital, plaintiff was referred to defendant.* After this visit, the only visit between defendant and plaintiff, defendant sent plaintiff to a pediatric ophthalmologist. Plaintiff, through his parents, commenced this action in 1995. After answering, defendant filed a motion for summary judgment requesting dismissal of the complaint due to the absence of a physician-patient relationship with plaintiff. Supreme Court denied this motion. Defendant appeals.

We affirm. Initially, we note that "[w]hether the physician's giving of advice furnishes a sufficient basis upon which to conclude that an implied physician-patient relationship had arisen is ordinarily a question of fact for the jury" (*Bienz v Central Suffolk Hosp.*, 163 AD2d 269, 270). Further, a doctor-patient relationship can be established by a telephone call (*see, id.*) when such a call "affirmatively advis[es] a prospective patient as to a course of treatment" and it is foreseeable that the patient would rely on the advice (*Miller v Sullivan*, 214 AD2d 822, 823; *see, Heller v Peekskill Community Hosp.*, 198 AD2d 265, 266).

Here, defendant testified that he discussed plaintiff's injury with Gorton, asked if plaintiff's eye pressure had been checked, and discussed treatment management with Gorton, including minimal activity restrictions and follow-up visits which at some point could include a visit to defendant's office. Significantly, plaintiff's aunt testified that she received written instructions which she subsequently gave to plaintiff's mother. These instructions were identical to defendant's testimony regarding the eye drops, taking Tylenol or Advil, resting and follow-up visits. Although the exposure to liability of a consulting physi-

---

* The gravamen of the cause of action against defendant is based solely on the events which occurred on August 31, 1991.

cian is limited (*see, Lipton v Kaye*, 214 AD2d 319, 320; *see also, Alvarez v Prospect Hosp.*, 68 NY2d 320, 323-325), the totality of the statements before Supreme Court provided evidence that defendant had more than an informal interest and involvement in plaintiff's condition and that an issue of fact exists regarding defendant's level of participation in plaintiff's treatment on August 31, 1991, especially in light of defendant's expertise in the field of ophthalmology and Chapman's lack of expertise in this area (*see, Sawh v Schoen*, 215 AD2d 291, 294; *Lee v City of New York*, 162 AD2d 34, 38, *lv denied* 78 NY2d 863).

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the order is affirmed, with one bill of costs.