[939 NYS2d 403]

Katherine De Jesus et al., Respondents, v Aruna Mishra, M.D., Appellant, et al., Defendants.

First Department, March 1, 2012

APPEARANCES OF COUNSEL

*Kaufman Borgeest & Ryan LLP*, Valhalla (*Jacqueline Mandell* of counsel), for appellant.

*The Jacob D. Fuchsberg Law Firm, LLP*, New York City (*Leslie D. Kelmachter* and *Jay A. Wechsler* of counsel), for respondents.

**OPINION OF THE COURT**

Saxe, J.

This appeal concerns the tragic stillbirth of an infant at the Bronx-Lebanon Hospital Center on October 13, 2003, in particular, the parents' malpractice claim against Dr. Aruna Mishra, the attending physician who delivered the stillborn infant by emergency cesarean section (c-section).

It is undisputed that when the parties arrived at the hospital's labor and delivery facility that morning, the infant was still alive. There is testimony that they arrived at the hospital emergency room at approximately 9:00 A.M., and that plaintiff mother was at the Labor and Delivery unit changing into a hospital gown at 10:32 A.M. The record contains some inconsistencies as to exactly when indications of fetal distress began; however, these details are not relevant to the issue of Dr. Mishra's liability, since it is undisputed that she was not called in until 11:07 A.M. Nevertheless, the following timetable is useful to clarify the series of events underlying the lawsuit, with the understanding that there may be some disagreement regarding the exact timing of these events.

10:42 A.M.  A fetal heart monitor is attached, and an initial fetal heart rate (FHR) of 140 beats per minute (bpm), a normal rate, is noted.

10:47 A.M.      Fetal monitor tape shows FHR deteriorating to 60 bpm before rebounding.

10:52 A.M.      Fetal monitor tape shows further bradycardic episodes with FHR of 60 bpm.

11:04 A.M.      Nurse has difficulty locating the fetal heart rate, contacts resident Dr. Rachana Gavara, who finds low heart rate, and contacts Dr. Mishra, the attending physician.

11:07 A.M.      Dr. Mishra examines plaintiff for the first time, diagnoses fetal distress, and calls for an immediate c-section; anesthesiologist is contacted. Dr. Mishra begins preparing for surgery.

11:11 A.M.      Bedside sonogram apparently detects no fetal heart rate (Chart notation: "Sono no heart rate?").

11:16 A.M.      Plaintiff on the operating table and receiving anesthesia.

11:19 A.M.      C-section performed by Dr. Mishra.

This lawsuit against the hospital and the hospital staff members involved in plaintiff's care asserts, inter alia, claims of negligence, medical malpractice, and the infliction of emotional distress, based upon those defendants' alleged failure to timely notice the fetal bradycardia recorded by the fetal monitor from at least 10:47 A.M. onward, and the failure to take timely appropriate steps in response. However, none of these claims are being pressed against Dr. Mishra. To the extent that the case concerns Dr. Mishra, plaintiffs no longer allege that any negligence on her part contributed to the fetus's death.

It is undisputed that Dr. Mishra was first called in at 11:07 A.M., at which time she diagnosed fetal distress, directed an emergency c-section, and began preparing to perform the procedure. Plaintiffs failed to show that Dr. Mishra acted improperly in her diagnosis of fetal distress and in her direction of an emergency c-section. Nor is there any allegation or showing that she was negligent by allowing an excessive period of time to elapse after directing the emergency c-section.

Being unable to proceed with a claim that Dr. Mishra contributed to the fetus's death by failing to timely perform a c-section, plaintiffs advance a theory of liability that is rather extraordinary when pressed against a doctor trying to save the life of a neonate. It is based on the notion that Dr. Mishra should

not have proceeded with the c-section because in the intervening minutes between her diagnosis of fetal distress and her commencement of the procedure, it appeared that the fetus had died. Consequently, plaintiffs assert, it was an act of medical malpractice for Dr. Mishra to continue with the surgical procedure and all its potential complications and risks. The claimed injury to the plaintiff is not any complication that actually resulted from the emergency c-section, but "the risks and complications inherent in this surgery including scarring, infection and death." Since there is no indication that plaintiff either died or developed an infection, the only claimed injuries that actually resulted from Dr. Mishra's alleged negligence are scarring at the incision line and the increased probability that future pregnancies will need to be delivered by c-section.

To establish her entitlement to summary judgment, defendant was required to show, prima facie, that she did not depart from good and accepted medical practice in her treatment of plaintiff mother (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Dr. Mishra made the requisite prima facie showing with the affirmation by her expert, who asserted, within a reasonable degree of medical certainty, that the appropriate procedure for plaintiff, who presented with a fetus in distress, was the performance of an emergency c-section.

The question is whether the affirmation by plaintiffs' expert successfully raises a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d at 324-325; Rebozo v Wilen, 41 AD3d 457, 458 [2007]). The expert asserted that Dr. Mishra departed from accepted standards of care by failing to call a halt to the properly ordered c-section once the fetal monitor and sonogram failed to detect a fetal heartbeat.

Plaintiffs emphasize that summary judgment is generally denied when the parties' medical experts disagree (citing Frye v Montefiore Med. Ctr., 70 AD3d 15 [2009]). However, competing experts almost always disagree; the question here is whether the claim of plaintiffs' expert, that performing a c-section was a departure, is sufficiently supported in the record to raise an issue for the trier of fact. I conclude that the opinion offered by plaintiffs' board-certified expert lacks sufficient foundation to raise an issue of fact. Indeed, on this record, there is no merit to the claim that it was a departure to fail to halt the c-section in the face of indications that the fetus had died after the procedure was directed.

First, it is important to note that as a general matter, physicians are expected and often required to attempt to resuscitate

individuals who stop breathing or whose hearts stop beating. Indeed, in a case cited by plaintiffs, this Court recently approved the proposition that malpractice may be committed by emergency responders who arrive after the patient has experienced "cardiac death" and fail to follow the medical protocols for attempting resuscitation (*see King v St. Barnabas Hosp.*, 87 AD3d 238 [2011]). Where infants are delivered without any palpable heartbeat, or without respiration, or both, substantial resuscitation efforts are undertaken and may proceed for extended periods (*see e.g. Golub v Good Samaritan Hosp. Med. Ctr.*, 2010 NY Slip Op 31603[U] [Sup Ct, Suffolk County 2010]; *Ferreira v Wyckoff Hgts. Med. Ctr.*, 24 Misc 3d 91 [App Term, 2d Dept 2009], *affd* 81 AD3d 587 [2011]). In fact, plaintiff's chart reflects that such efforts were made here, immediately upon delivery of the infant.

Yet, plaintiffs' expert claims that the apparent absence of a heartbeat should have caused Dr. Mishra to call off the emergency c-section. He fails to acknowledge that this would have precluded any attempt at resuscitation. Moreover, he offers no facts from which it could be inferred that the information available to Dr. Mishra at the time she began the c-section would have justified the conclusion that the fetus had been dead too long for any attempt at resuscitation upon delivery to succeed. Indeed, plaintiffs' expert does not suggest the length of time after the fetal heartbeat has definitively stopped that precludes any possibility of resuscitation, although evidence on that point could have raised an issue of fact as to whether the planned c-section had become unnecessary. In the absence of any factually founded assertion that attempts at resuscitation would have been pointless, the claim that Dr. Mishra should have halted the properly ordered emergency c-section is conclusory.

Moreover, the expert accepted as fact that the fetus's heart had conclusively ceased beating at 11:11 A.M., relying primarily on the chart notation that seems to indicate that a sonogram detected no fetal heartbeat at 11:11 A.M. and on fetal monitor tapes showing that by 11:11 A.M. no fetal heartbeat was detected. These indicators are too equivocal to establish that the fetus had irretrievably expired at that time. To rely on the sonogram to call a halt to the c-section, Dr. Mishra would first have had to accept as a certainty that the sonography was performed properly and the finding accurate. Even less reliable is the fetal monitor tape indicating that the monitor failed to detect a heartbeat (*see* 3 Louisell and Williams, Medical Malpractice

¶ 17G.14 [2], at 17G-102). Neither indicator would have justified the doctor's abandoning any further attempts at saving the infant.

However, even accepting that the sonogram and fetal monitor tape established the time of fetal death, the claim of malpractice must still fail because the expert did not state how much time must pass after the point that the fetal heart ceases beating before resuscitation becomes impossible.

There is simply insufficient evidence in the record supporting the opinion of plaintiffs' expert that Dr. Mishra acted in violation of medical standards.

This is not to suggest that a plaintiff can never establish medical malpractice based on a physician's performing an unnecessary c-section to remove an already deceased fetus. However, to make such a case, the plaintiff must, at least, establish the existence of a factual basis for a finding that the physician should have concluded that it was too late for surgical intervention and subsequent resuscitation efforts to have any chance of success.

In addition to finding no factual basis for the claim of medical malpractice against Dr. Mishra, we find nothing in the record to support plaintiffs' claims against her for negligent hiring and supervision, lack of informed consent, and negligent infliction of emotional distress. We therefore grant Dr. Mishra's motion for summary judgment dismissing the complaint as against her. Whatever viable claims there may be against the remaining defendants, there is no viable theory of liability pleaded here as against Dr. Mishra.

Accordingly, the order of the Supreme Court, Bronx County (Lucindo Suarez, J.), entered October 20, 2010, which denied the motion of defendant Mishra for summary judgment dismissing the complaint as against her should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

TOM, J.P., MOSKOWITZ, DEGRASSE and ABDUS-SALAAM, JJ., concur.

Order, Supreme Court, Bronx County, entered October 20, 2010, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.