■ EDWARD TOM, Respondent, v NARAYAN SUNDARESAN, Appellant, et al., Defendants. [966 NYS2d 434]—

Order, Supreme Court, New York County (Alice Schlesinger, J.), entered May 24, 2012, which, insofar as appealed from as limited by the briefs, denied the motion of defendant Narayan Sundaresan for summary judgment dismissing that part of the cause of action alleging medical malpractice as against him premised on departures prior to April 11, 2005, and the cause of action as against him alleging lack of informed consent, unanimously modified, on the law, to grant the motion to the extent of dismissing the cause of action alleging lack of informed consent, and otherwise affirmed, without costs.

The court properly denied the motion of Sundaresan, a neurosurgeon, for summary judgment dismissing the malpractice claim arising from care rendered before April 11, 2005 on the basis of a lack of a duty of care. The record presents triable issues as to whether a physician-patient relationship existed as of the evening of April 10th by virtue of a telephone consultation between Dr. Sundaresan and the other individual defendant neurosurgeon, Dr. Holtzman. While the issue of whether a physician owes a duty of care is a question of law, whether a physician-patient relationship exists is generally an issue of fact (Raptis-Smith v St. Joseph's Med. Ctr., 302 AD2d 246, 247 [1st Dept 2003]; Cogswell v Chapman, 249 AD2d 865, 866 [3d Dept 1998]). To overcome a motion for summary judgment on the issue of whether a physician-patient relationship exists, "[i]t is not necessary that a [physician] see, examine, take a history of or treat a patient" (Raptis-Smith, 302 AD2d at 247). Indeed, plaintiffs have overcome summary judgment on the existence of a physician-patient relationship in cases where the moving physician had formulated plans in conjunction with other medical professionals who later relied on those recommendations (Scalisi v Oberlander, 96 AD3d 106, 123 [1st Dept 2012]), and where there was testimony that the physician consulted with a nurse midwife concerning the treatment of the plaintiff (Santos v Rosing, 60 AD3d 500 [1st Dept 2009]).

Here, there is an issue of fact as to whether the April 10, 2005 telephone conversation between Dr. Holtzman and Dr. Sundaresan gave rise to a physician-patient relationship between Dr. Sundaresan and plaintiff. Both doctors testified that, during this conversation, Dr. Holtzman told Dr. Sundaresan that he was transferring a patient from Cabrini Medical Center, where Dr. Holtzman was the on-call and consulting neurosurgeon, to codefendant Lenox Hill Hospital, where Dr. Sundaresan was an attending neurosurgeon, because Cabrini does not perform MRIs on weekends. Both doctors further testified that they discussed that the patient was an achondroplastic dwarf with multiple medical conditions, although Dr. Sundaresan recalled discussing an acute case of cauda equina syndrome (CES) while Dr. Holtzman remembered being unsure whether plaintiff had CES, conus medullaris syndrome, or a combination of the two.

Both doctors understood that Dr. Sundaresan would consult on the patient and perform surgery together with Dr. Holtzman, as the two doctors had done more than 100 times since the early 1980s, and Dr. Holtzman testified that the collective plan was that Dr. Sundaresan would be the chief surgeon for plaintiff. Dr. Sundaresan testified that they "would both accept responsibility for the surgery." Dr. Holtzman also testified that "we were trying to transfer [plaintiff] to Lenox Hill" (in part, because Sundaresan "had not seen [plaintiff] yet"), "[w]e both felt" that the MRI and medical evaluation was important, and another purpose of the transfer was "for evaluation by both of us." From the above testimony, a jury could reasonably infer that both doctors expressly contemplated treating plaintiff as part of the surgical team managing his care and that during the April 10th conversation, they jointly planned to perform surgery pending the results of the tests.

Dr. Sundaresan relies on *Sawh v Schoen* for the premise that a physician who merely discusses a patient's condition does not assume the duty to accurately advise and verify that his advice has been followed, and is not liable in medical malpractice (215 AD2d 291, 292-293 [1st Dept 1995]). In *Sawh*, the physician had no recollection of ever discussing the condition and the "[p]laintiff's entire theory of liability [was] that a member physician who attends group staff meetings at which a patient's care is discussed thereby assumes liability for any deviation from accepted medical practice in the course of treatment rendered by his associates" (*id.*). Here, plaintiff has put forth testimony by both physicians that they had a detailed conversation regarding his conditions, during which they planned for a

surgery to be performed jointly by both of them. This certainly rises above the "rank speculation" of the plaintiff in *Sawh*, where the court noted that "[m]erely pointing to circumstances in which a defendant physician might have undertaken joint management of the patient's care is not sufficient" (*id.* at 293).

Dr. Sundaresan also relies on *Burtman v Brown*, which correctly expressed that "the question is whether the physician owes a duty under the circumstances of a particular scenario" (97 AD3d 156, 162 [1st Dept 2012]). While the circumstances in that case were not in dispute, because the patient's faulty memory could not raise a triable issue to controvert the documentary evidence, as noted above, the circumstances of the particular scenario here *are* in dispute, raising a triable issue of fact sufficient to overcome Dr. Sundaresan's motion.

The cause of action alleging lack of informed consent as against Sundaresan should have been dismissed. Plaintiff never addressed the argument that the claim should be dismissed, and the record establishes that it was the other individual defendant neurosurgeon, who is not party to this appeal, who explained the procedure to plaintiff and obtained his consent (*see Brady v Westchester County Healthcare Corp.*, 78 AD3d 1097, 1099 [2d Dept 2010]). Concur—Sweeny, J.P., Moskowitz, Feinman and Clark, JJ.