Marshall v Rosenberg (2021 NY Slip Op 04180)





Marshall v Rosenberg


2021 NY Slip Op 04180


Decided on July 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 1, 2021

532357
[*1]Patricia Marshall, Appellant,
v
Richard A. Rosenberg et al., Respondents.

Calendar Date:May 25, 2021

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Reynolds Fitzgerald, JJ.

Ziff Law Firm, LLP, Elmira (Christina Bruner Sonsire of counsel), for appellant.
Levene, Gouldin & Thompson, LLP, Vestal (Margaret J. Fowler of counsel), for Richard A. Rosenberg and others, respondents.
Aswad & Ingraham, LLP, Binghamton (Mary Saitta of counsel), for Brian Connolly and another, respondents.



Garry, P.J.
Appeal from an order of the Supreme Court (Baker, J.), entered March 2, 2020 in Chemung County, which granted defendants' motions for summary judgment dismissing the complaint.
On December 9, 2014, plaintiff was seen in a hospital for eye problems and was sent to defendant Twin Tiers Eye Care Associates, P.C., where she was evaluated by defendant Richard A. Rosenberg, an ophthalmologist. Rosenberg diagnosed plaintiff with, among other things, iritis/optic neuritis in the right eye, with an acute pressure strike. Plaintiff was given medication and eye drops and instructed to return to the hospital for neurological testing. She was admitted to the hospital. The next day, plaintiff was seen by defendant Douglas E. Willard, another ophthalmologist within Twin Tiers' practice, who authorized her release from the hospital with instructions to continue medications and follow up with Rosenberg. On December 17, 2014, Rosenberg examined plaintiff and made observations that raised the possibility of several diagnoses, including the rare condition of bilateral acute retinal necrosis (hereinafter BARN). Based on that and another possible diagnosis, Rosenberg recommended that plaintiff obtain an evaluation with a retinal specialist at defendant Retina Associates of Western New York, P.C. within one to two days. A medical scribe at Twin Tiers called Retina Associates and scheduled plaintiff an appointment to see defendant Brian Connolly on December 30, 2014. This was subsequently rescheduled to January 7, 2015, at plaintiff's request due to her holiday travel plans.
On December 23, 2014, plaintiff's physician referred her back to Twin Tiers when she presented with continued eye symptoms. Plaintiff was seen that day by Willard, who observed that her left eye symptoms were returning after ending steroid treatment, so he prescribed a low dose steroid to keep the symptoms at bay until her appointment with the retinal specialist. A few days later, while on vacation out of state, plaintiff was treated for further vision problems. She was diagnosed with BARN in her right eye and hospitalized for 17 days.
Plaintiff commenced this action asserting that defendants failed to properly and promptly diagnose and treat her for BARN, which resulted in, among other injuries, severe loss of vision in both eyes.[FN1] Following joinder of issue and discovery, Twin Tiers, Rosenberg and Willard moved for summary judgment dismissing the complaint against them. Retina Associates and Connolly also moved for summary judgment. Supreme Court granted both motions and dismissed the complaint. Plaintiff appeals.
"To meet the initial burden on a summary judgment motion in a medical malpractice action, [the] defendants must present factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that they complied with the accepted standard of care or did not cause any injury to the patient" (Tkacheff [*2]v Roberts, 147 AD3d 1271, 1272 [2017] [internal quotation marks and citations omitted]; see Cole v Chun, 185 AD3d 1183, 1186 [2020]). Should a prima facie case be established, the burden shifts to the plaintiff to come forward with proof demonstrating the defendants' deviation from accepted medical practice and that such deviation was the proximate cause of the plaintiff's injuries, so as to raise a triable question of fact (see Furman v DeSimone, 180 AD3d 1310, 1311 [2020]; see Yerich v Bassett Healthcare Network, 176 AD3d 1359, 1361 [2019]). The threshold question in determining a medical professional's liability is whether that professional owed the plaintiff a duty of care; this is a legal question for courts to determine, "taking into account common concepts of morality, logic and consideration of the social consequences of imposing the duty" (McNulty v City of New York, 100 NY2d 227, 232 [2003] [internal quotation marks and citation omitted]; see McAlwee v Westchester Health Assoc., PLLC, 163 AD3d 549, 551 [2018]). "Generally, a doctor only owes a duty of care to his or her patient" (McNulty v City of New York, 100 NY2d at 232). Although "[a] physician-patient relationship is created when professional services are rendered and accepted for purposes of medical or surgical treatment[, a]n implied physician-patient relationship can arise when a physician gives advice to a patient, even if the advice is communicated through another health care professional" (Thomas v Hermoso, 110 AD3d 984, 985 [2013] [citations omitted]; see Raptis-Smith v St. Joseph's Med. Ctr., 302 AD2d 246, 247 [2003]). "Whether a physician's proffer of advice furnishes a sufficient basis upon which to conclude that an implied physician-patient relationship has arisen is ordinarily a question of fact for a jury" (Thomas v Hermoso, 110 AD3d at 985 [citations omitted]; see Rogers v Maloney, 77 AD3d 1427, 1428 [2010]; Cogswell v Chapman, 249 AD2d 865, 866 [1998]). Where the parties in a medical malpractice action submit conflicting expert opinions, the resulting credibility issues must be resolved by a jury, rendering summary judgment inappropriate (see DiGeronimo v Fuchs, 101 AD3d 933, 936 [2012]).
In support of their motion, Twin Tiers, Rosenberg and Willard submitted the deposition transcripts of several witnesses and an expert affirmation by Mark Verra, an ophthalmologist. Verra averred that Rosenberg and Willard provided reasonable and appropriate care to plaintiff by examining her, prescribing medications and referring her to a specialist. Verra asserted that BARN is "extremely rare" and "beyond the scope of expertise of general ophthalmologists," such that they "would not be qualified to opine on [its] treatment or on the timing of the treatment," and that a general ophthalmologist's standard of care for this condition is satisfied "by referring the patient to a retinal specialist." Verra noted that the prognosis for BARN is very poor, with 50-75% of patients sustaining [*3]retinal detachment regardless of the treatment regimen, and opined that "[i]t is highly likely that the clinical course of the plaintiff patient would not have differed had she seen the retinal specialist within one to two days of . . . Rosenberg's referral."
Rosenberg testified that he had previously encountered BARN only once, during his residency three decades earlier. He recommended that plaintiff follow up with Retina Associates within one to two days because he lacked familiarity with BARN and would defer to a specialist regarding that potential diagnosis. Willard testified that he had never previously encountered a case of BARN. He admitted that, on December 23, 2014, he did not read the entirety of Rosenberg's notes from plaintiff's prior visit and was not aware that Rosenberg had noted a possible diagnosis of BARN. Willard was not pleased that plaintiff was delaying her appointment with the specialist but understood that she desired to spend time with family for the holidays. However, Willard also testified that, had he seen the notation regarding BARN in plaintiff's chart, he would have encouraged plaintiff to keep the December 30, 2014 appointment with Retina Associates rather than delaying it further.
The Twin Tiers scribe testified that if a referral was recommended during an appointment, she typically would make a phone call at the end of that appointment, while the patient waited in the lobby, to schedule the referral appointment. Although she was unable to recall the phone call regarding plaintiff, the scribe averred that when making a referral appointment she typically communicates the reason for the referral, the patient's current vision and when the physician would like the patient to be seen. The scribe called Retina Associates but does not remember who she spoke to there, though she would not typically speak to a doctor. The note she typed in plaintiff's chart says that Rosenberg recommended a referral to a retinal specialist to address BARN versus one other diagnosis "within the next 1-2 days. Per Dr Connolly, patient can wait to be seen until next week. Appointment scheduled for 12/30/14." The scribe testified that she would always review with the referring doctor — here, Rosenberg — the date of the scheduled appointment.
In support of their motion, Connolly and Retina Associates submitted the deposition transcripts of several witnesses and an expert affirmation by Andrew Robinson, an ophthalmologist, who averred that no physician-patient relationship was formed between plaintiff and Connolly and, alternatively, that Connolly had acted within the standard of care. Connolly testified that leaving BARN untreated could result in retinal detachment, inflammation, high eye pressure and glaucoma, so a differential diagnosis of BARN would need to either be ruled out or treated immediately. Connolly opined that, in a situation such as plaintiff's, Retina Associates would typically offer an appointment to a referral [*4]patient for that same day. Connolly stated that he did not review the referral letter from Twin Tiers; he normally would have done so before plaintiff's appointment, but she did not keep the appointment.
Rosenberg established his prima facie entitlement to summary judgment (see Meade v Yland, 140 AD3d 931, 933 [2016]). As opined by Verra, Rosenberg's referral to a specialist after suspecting an illness outside of his purview was in accordance with accepted practice. However, Willard testified that he did not read the office notes from plaintiff's prior visit or notice that Rosenberg had raised a differential diagnosis of BARN and, had he seen that notation he would have changed his medical treatment by encouraging plaintiff to attend an earlier referral appointment. As his own testimony created a question of fact as to whether he deviated from the standard of care, Willard did not meet his initial burden on the motion. Because Twin Tiers can be held vicariously liable for Willard's conduct, it also did not meet its burden. Thus, Supreme Court should not have granted the motion as to Willard or Twin Tiers, regardless of the strength of the opposing papers.
In opposition to the motion as to Rosenberg, plaintiff averred that at her December 17, 2014 appointment, Rosenberg advised her to see a specialist, but no one told her that it was important to do so within the next one to two days. At the end of the appointment, Rosenberg instructed her to go to the front desk where a Twin Tiers employee made a referral appointment and told her it was scheduled for December 30, 2014. When plaintiff mentioned her travel plans and asked if the appointment could be moved to a later date, she was told that it should not be a problem and that the specialist would contact her with a new date. She averred that she was not advised of the seriousness of the condition or that she could go blind if not treated immediately, and that she would have obtained rapid treatment from a specialist had she been so informed.
Plaintiff's expert ophthalmologist, Joseph Femia, affirmed that Rosenberg departed from the requisite standard of care by failing to properly obtain a timely consultation with a specialist after making a differential diagnosis of BARN, communicate to plaintiff that BARN was suspected and is a serious condition, and stress to plaintiff that failing to obtain timely treatment from the specialist could result in blindness. Femia averred that Rosenberg's differential diagnosis and related referral required him to take steps to make sure that his concerns were adequately communicated to Retina Associates, which apparently did not happen as the referral appointment was originally scheduled for 13 days later and then moved back another week.[FN2] Plaintiff also produced the expert affidavit of ophthalmologist John Huang, who opined that "plaintiff's chance for a good outcome was significantly reduced because treatment for BARN was not begun promptly after it [*5]was made part of her differential diagnosis."
Plaintiff's expert affidavits raised questions regarding breach of duty and causation. Because the expert opinions of Verra and Robinson conflict with those of Femia and Huang, specifically as to whether a potential diagnosis of BARN is within the purview of a general ophthalmologist and whether Rosenberg should have affirmatively acted to ensure a timely appointment with a specialist, a credibility issue was raised that would be more properly resolved by a jury, rendering summary judgment inappropriate (see Kovacic v Griffin, 170 AD3d 1143, 1144-1145 [2019]; Fuller v Aberdale, 130 AD3d 1277, 1283-1285 [2015]). Accordingly, Supreme Court should have denied the motion as to Rosenberg, as well as Willard and Twin Tiers.
Connolly and Retina Associates met their initial burden by presenting evidence establishing that they did not owe a duty of care to plaintiff, through proof that they never saw, spoke to, treated, nor rendered any diagnosis or medical advice regarding plaintiff (see McAlwee v Westchester Health Assoc., PLLC, 163 AD3d at 551). In opposition, plaintiff acknowledges that she never received treatment from or spoke with Connolly or Retina Associates. Instead, plaintiff relies on a notation in her medical records from Twin Tiers stating that Rosenberg initially requested that she be evaluated by Retina Associates within one to two days and that a later appointment was scheduled only after Connolly apparently informed Twin Tiers that she "could wait to be seen until next week." Moreover, after allegedly giving this advice regarding timing, Retina Associates scheduled the appointment beyond that acceptable time frame — for 13 days later.
"[A] doctor-patient relationship can be established by a telephone call when such a call affirmatively advises a prospective patient as to a course of treatment and it is foreseeable that the patient would rely on the advice" (Cogswell v Chapman, 249 AD2d at 866 [internal quotation marks, brackets and citations omitted]; see Campbell v Haber, 274 AD2d 946, 946-947 [2000]), "and that the prospective patient did in fact rely on the advice" (Miller v Sullivan, 214 AD2d 822, 823 [1995]). As an example, "[i]t is not necessary that a radiologist see, examine, take a history of or treat a patient in rendering medical services"; if the radiologist rendered a diagnostic opinion that was conveyed to treating providers, a physician-patient relationship may be formed between the patient and the radiologist (Raptis-Smith v St. Joseph's Med. Ctr., 302 AD2d at 247; see generally Tom v Sundaresan, 107 AD3d 479, 480 [2013]; Rogers v Maloney, 77 AD3d 1427, 1428-1429 [2010]; Santos v Rosing, 60 AD3d 500, 500 [2009]). An implied physician-patient relationship can arise with a specialist if the patient's treating physician reasonably and foreseeably relied upon the specialist's advice to the patient's detriment (see Giunta v Lawrence Hosp., 270 AD2d 117, 118 [2000]).
The [*6]notation in plaintiff's chart stated that Rosenberg recommended an appointment with Connolly "within the next 1-2 days. Per Dr Connolly, patient can wait to be seen until next week." The record does not reveal the original basis for that note. Connolly denied having spoken with anyone regarding the scheduling of plaintiff's appointment, and he testified that his office typically offers a referral appointment that same day. Although Twin Tiers' scribe testified that she did not recall who she spoke to at Retina Associates and she would not typically speak to a physician, the note she typed indicates that Connolly provided advice regarding the timing of the referral appointment. Multiple questions are posed regarding the source of the advice in the note: did Connolly himself speak to someone from Twin Tiers and give that advice, did an employee of Retina Associates who was scheduling the appointment for plaintiff speak to Connolly and relay his advice to the Twin Tiers scribe, did an employee of Retina Associates give that advice and attribute it to Connolly without actually speaking to him, did such employee give that advice and not attribute it to Connolly but the Twin Tiers scribe assumed that it originated with Connolly, or did the Twin Tiers scribe write the note without having received any such advice from Connolly or Retina Associates?
Viewing the evidence in a light most favorable to plaintiff, a triable factual question exists regarding whether the notation in Twin Tiers' chart — attributing a comment to Connolly regarding scheduling of treatment — is sufficient to establish an implied physician-patient relationship between plaintiff and Connolly or Retina Associates (see Thomas v Hermoso, 110 AD3d at 985-986; see also Raptis-Smith v St. Joseph's Med. Ctr., 302 AD2d at 247; Cogswell v Chapman, 249 AD2d at 866-867; Bienz v Cent. Suffolk Hosp., 163 AD2d 269, 270 [1990]). A factual question also exists as to whether plaintiff or Rosenberg reasonably and foreseeably relied upon this advice attributed to Connolly, as some information in the record indicates that a general ophthalmologist would typically defer to a retinal specialist in relation to treatment of BARN, including the timing of such treatment (see Lawliss v Quellman, 38 AD3d 1123, 1124 [2007]; Giunta v Lawrence Hosp., 270 AD2d at 118). Further, Femia opined that the standard of care for BARN requires immediate treatment and Huang opined that the failure to treat plaintiff in a timely fashion significantly reduced her chance for a good outcome, raising questions of fact regarding breach of duty and proximate cause (see Lawliss v Quellman, 38 AD3d at 1124). Accordingly, Supreme Court erred in granting summary judgment to Connolly and Retina Associates.
Egan Jr., Clark, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and motions denied.



Footnotes

Footnote 1: Plaintiff's spouse initially brought derivative claims against all defendants. Those claims have been discontinued and he is no longer a party.

Footnote 2: Had Willard met his initial burden, Femia's affidavit raised questions as to whether he violated the standard of care by failing to read the prior notes, inform plaintiff of the seriousness of her potential condition, ensure a more timely referral appointment and conduct an examination of the retina and optic nerve on December 23, 2014 due to exacerbation of plaintiff's condition.