Busch v Sherman (2022 NY Slip Op 06049)

Busch v Sherman

2022 NY Slip Op 06049

Decided on October 27, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 27, 2022

533984
[*1]Michael Busch, Respondent,
v
Robert A. Sherman et al., Appellants, et al., Defendant.

Calendar Date:September 13, 2022

Before:Garry, P.J., Egan Jr., Clark, Fisher and McShan, JJ.

Sugarman Law Firm, LLP, Syracuse (Jenna W. Klucsik of counsel), for appellants.
Schlather, Stumbar, Parks & Salk, LLP, Ithaca (Raymond M. Schlather of counsel), for respondent.

Egan Jr., J.
Appeal from an order of the Supreme Court (Joseph A. McBride, J.), entered August 18, 2021 in Tompkins County, which denied defendants' motion for summary judgment dismissing the complaint.
In November 2015, plaintiff, then over 60 years old and suffering from a painfully arthritic right hip, sought treatment from defendant Robert A. Sherman, an orthopedic surgeon and a partner in defendant Upstate Orthopedics, LLP. Sherman recommended that plaintiff undergo right total hip replacement surgery and, on December 9, 2015, Sherman admitted plaintiff to Upstate University Hospital at Community Campus (hereinafter the hospital) in the City of Syracuse, Onondaga County, for that purpose. Sherman performed the surgery later that day without incident. Plaintiff remained in the hospital for several days for postoperative care provided by, in addition to hospital staff, Sherman and defendant Stephanie Livermore, a physician assistant employed by Upstate Orthopedics.
Plaintiff developed a pressure ulcer on his buttocks during the hospitalization that had not healed by the time of his December 16, 2015 discharge to a rehabilitation facility and that required extensive further care, including hospitalization, to treat. Plaintiff commenced this medical malpractice action in December 2017, alleging that Sherman and Livermore had deviated from the proper standard of care by, among other things, failing to take steps to prevent the pressure ulcer from developing, failing to properly treat it once it did and prematurely discharging him from the hospital.[FN1] Following joinder of issue and discovery, Sherman, Livermore and Upstate Orthopedics (hereinafter collectively referred to as defendants) moved for summary judgment dismissing the complaint. Supreme Court denied defendants' motion, and they appeal.
We affirm. As the movants for summary judgment in a medical malpractice action, defendants were obliged to come forward with proof reflecting that they did not deviate from accepted medical practice or that any such deviation was not a proximate cause of plaintiff's injury (see Doe v Langer, 206 AD3d 1325, 1330 [3d Dept 2022]; Marshall v Rosenberg, 196 AD3d 817, 818 [3d Dept 2021]; Longtemps v Oliva, 110 AD3d 1316, 1317 [3d Dept 2013]). To that end, defendants came forward with the expert affirmation of orthopedic surgeon William Walsh Jr., who reviewed the pertinent medical records of plaintiff as well as the deposition testimony of Sherman, Livermore and hospital staff and opined that defendants had complied with the proper standard of care in treating plaintiff and had not caused his injuries. Walsh observed, among other things, that Sherman gave postoperative orders for plaintiff to begin moving around and engage in physical therapy soon after the surgery and that, given the hospital policy that plaintiff be turned in bed every two hours, no additional measures were required to prevent the development of a pressure ulcer. Walsh further opined that wound prevention [*2]and care was a task for the hospital's nursing staff — pointing to the deposition testimony of several nurses who acknowledged that it was their responsibility to prevent pressure ulcers as well as the fact that it was the hospital's wound care specialist who examined plaintiff and developed a treatment plan for his pressure ulcer — and that defendants properly deferred to hospital staff to address the pressure ulcer. Walsh also found nothing untoward in the timing of plaintiff's discharge from the hospital to a rehabilitation facility, observing that the discharge orders signed by Livermore alerted that facility to both the pressure ulcer and the wound care plan for it.
The foregoing satisfied defendants' initial burden on a motion for summary judgment and shifted the burden "to plaintiff to present expert medical opinion evidence that there was a deviation from the accepted standard of care and that this departure was a proximate cause of his injury" (Fischella v Saint Luke's Cornwall Hosp., 204 AD3d 1343, 1344 [3d Dept 2022]; see Marshall v Rosenberg, 196 AD3d at 818; Furman v DeSimone, 180 AD3d 1310, 1311 [3d Dept 2020]). Plaintiff came forward with the affirmation of orthopedic surgeon John Tydings, who described his review of the relevant proof as well as Walsh's affirmation and opined that defendants departed from the applicable standards of care in various respects that were a cause of plaintiff's injuries. Our review of that affirmation confirms that, notwithstanding defendants' arguments to the contrary, Tydings adequately explained that the applicable standards of care obliged Sherman and Livermore to play some role in the care of plaintiff's pressure ulcer and went on to specify what the relevant standards were and how defendants departed from them (compare Webb v Albany Med. Ctr., 151 AD3d 1435, 1437 [3d Dept 2017]; Passero v Puleo, 17 AD3d 953, 954-955 [3d Dept 2005]).[FN2]
For instance, Tydings explained how those standards required Sherman to address at the outset of the hospitalization the "readily foreseeable" risk of an obese patient such as plaintiff developing a pressure ulcer and noted that Sherman had failed to do so, instead waiting until three days after the surgery, at which point plaintiff's skin was deteriorating, to authorize the use of a special pressure redistribution mattress that had been recommended by the hospital's wound care specialist. Tydings further explained how Sherman and Livermore departed from the accepted standards of care by failing to follow up on the recommendations of the wound care specialist — and, indeed, by disclaiming all responsibility for the wound care itself — and by discharging plaintiff to a rehabilitation facility before his condition was stable and his pressure ulcer was under control. In view of the foregoing, even if Tydings was not "as precise as we would prefer" in his affirmation, it was "substantively sufficient to withstand defendant[s'] motion[]" by raising material questions of [*3]fact as to the care provided by defendants (Nandy v Albany Med. Ctr. Hosp., 155 AD2d 833, 834 [3d Dept 1989]; see Frank v Smith, 127 AD3d 1301, 1302-1303 [3d Dept 2015]; Bell v Ellis Hosp., 50 AD3d 1240, 1242 [3d Dept 2008]; Flower v Noonan, 271 AD2d 825, 826 [3d Dept 2000]). Thus, defendants' motion was properly denied.
Defendants' remaining arguments, to the extent that they are not addressed above, have been examined and found to be lacking in merit.
Garry, P.J., Clark, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Plaintiff commenced a related action against the State of New York, the owner and operator of the hospital, in the Court of Claims (see Education Law § 352 [3]).

Footnote 2: Defendants complain that Tydings failed to describe how he was familiar with hip replacement surgery and the standards for post-operative care. Without belaboring the point, the fact that Tydings was a board-certified orthopedic surgeon was "sufficient to support the inference that his opinion regarding [plaintiff]'s treatment was reliable, and any alleged lack of skill or experience goes to the weight to be given to the opinion, not its admissibility" (Bell v Ellis Hosp., 50 AD3d 1240, 1242 [3d Dept 2008] [internal citations omitted]).