| |
|---|
| **England v Capello** |
| 2024 NY Slip Op 32193(U) |
| July 1, 2024 |
| Supreme Court, Saratoga County |
| Docket Number: Index No. EF20213420 |
| Judge: Richard A. Kupferman |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SARATOGA

---

LESLEY ENGLAND, AS EXECUTRIX OF THE
ESTATE OF LUKE G. ENGLAND,

                    Plaintiff,

        -against-

SETH A. CAPELLO, M.D.;
SANDRA M. HERMANS, N.P.;
JOSENIA N. TAN, M.D.;
THE SARATOGA HOSPITAL;
SARATOGA HOSPITAL MEDICAL GROUP;
SARATOGA REGIONAL UROLOGY ASSOCIATES,

                    Defendants.

**DECISION & ORDER**

**Index No.: EF20213420**

---

Appearances:

Jesse A. Drumm, Esq.
Brown Chiari LLP
2470 Walden Avenue, Buffalo, NY 14225
*Attorneys for Plaintiff*

Karen A. Butler, Esq.
Maynard, O'Connor, Smith & Catalinotto, LLP
6 Tower Place, Albany, NY 12203
*Attorneys for Defendant,*
  *Seth A. Capello, M.D.*

Kathleen A. Barclay, Esq.
O'Connor, O'Connor, Bresee & First, PC
20 Corporate Woods Boulevard, Albany, NY 12211
*Attorneys for the Defendants,*
  *Sandra M. Hermans, N.P., The Saratoga Hospital,*
  *Saratoga Hospital Medical Group, and*
  *Saratoga Regional Urology Associates*

Kevin P. Burke, Esq.
Monique B. McBride, Esq.
Burke, Scolamiero & Hurd, LLP
7 Washington Square, Albany, NY 12212
*Attorneys for Defendant,*
  *Josenia N. Tan, M.D.*

1

KUPFERMAN, J.:

This is a medical malpractice action seeking to recover monetary damages based on the defendants' alleged failure to timely diagnose the decedent's bladder cancer. The crux of the claim against the defendant pathologist is that she deviated from the standard of care when she evaluated two specimens provided to her by clinicians at a urology group who were treating the decedent for urinary problems. After discovery, the defendant pathologist filed this pending motion seeking summary judgment dismissing the complaint as against her.

The parties have provided competing expert proof on the motion. Both experts (board-certified pathologists) assert that they have reviewed the same specimens which were evaluated by the defendant pathologist. Unsurprisingly, the pathologist's expert opines that the pathologist accurately interpreted the specimens and did not deviate from the standard of care, whereas the plaintiff's expert opines that the pathologist inaccurately interpreted the specimens and deviated from the standard of care.[1]

A physician seeking summary judgment in a medical malpractice action bears "the initial burden of presenting factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that [he or she] complied with the accepted standard of care or did not cause any injury to the patient" (Schwenzfeier v St. Peter's Health Partners, 213 AD3d 1077, 1078 [3d Dept 2023] [internal quotation marks, brackets, and citations omitted]). If the physician satisfies this standard, the burden then shifts to the plaintiff to

---

[1] The pathologist's expert does not address causation. In contrast, the plaintiff's expert opines that these deviations were a significant contributing factor in the spreading of the decedent's bladder cancer. Specifically, he opines that if the decedent's cancer "was diagnosed when it should have been, in 2015, there were treatments available that very likely would have cured [the decedent's] cancer." He further opines that at that time the "cancer was in its early stages, confined to the bladder and possibly the prostatic urethra, and could have been treated with BCG intravesical immunotherapy" and that, if unsuccessful, the treatment could have included surgery.

2

[* 2]

"present expert medical opinion evidence that there was a deviation from the accepted standard of care and that this departure was a proximate cause of [the] injury" (id. at 1080 [internal quotation marks and citations omitted]). "[E]xpert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (Longhi v Lewit, 187 AD3d 873, 878 [2d Dept 2020] [internal quotation marks and citation omitted]; see Schwenzfeier, 213 AD3d at 1080-1083). "In order not to be considered speculative or conclusory, expert opinions in opposition to a physician's motion for summary judgment should address specific assertions made by the physician's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (Schwenzfeier, 213 AD3d at 1080 [internal quotation marks, brackets, and citation omitted]).

The defendant pathologist's findings/diagnosis are set forth in two reports. Regarding the first report (a cytology report from March 2015), the dispute essentially concerns the language used by the defendant pathologist in her report, which states that the decedent's urine specimen contained "Highly atypical urothelial cells, suspicious for malignancy." As explained above, the pathologist's expert opines that such language was appropriate. She opines that the standard of care "requires a pathologist to report that a cytology specimen falls into one of four categories - benign, atypical, suspicious for malignancy, and malignancy" and that the defendant pathologist complied with the standard of care in reporting the cells as "highly atypical urothelial cells, suspicious for malignancy." She further opines that the standard of care "does not require that the pathologist specify in what ways the cells are highly atypical and suspicious for malignancy, just that they are highly atypical and suspicious for malignancy." This expert opinion, together with the deposition testimony and medical records, satisfies the defendant pathologist's initial burden (see id. at 1078-1079; Humphrey v Riley, 163 AD3d 1313, 1314 [3d Dept 2018]; De Jesus v

3

Mishra, 93 AD3d 135, 138 [1st Dept 2012]; Douglass v Gibson, 218 AD2d 856, 856-857 [3d Dept 1995]).

In opposition, the plaintiff's expert opines that the language used by the defendant pathologist "did not properly convey the appropriate level of suspicion to the clinician, and thus fell below the standard of care." He further opines that the defendant pathologist should have reported the findings as "suspicious for high grade urothelial carcinoma" rather than simply "suspicious for malignancy." The Court finds that this opinion is too conclusory and therefore does not create an issue of fact (see Schwenzfeier, 213 AD3d at 1080-1083; Longhi v Lewit, 187 AD3d 873, 878-880 [2d Dept 2020]; Humphrey, 163 AD3d at 1314-1315; Rivers v Birnbaum, 102 AD3d 26, 43-48 [2d Dept 2012]; De Jesus, 93 AD3d at 138-140).

Among other things, the plaintiff's expert has failed to address the opinion of the pathologist's expert that the standard of care for cytology involves only four categories of reporting, and that a pathologist is not required to specify further about the ways the cells are highly atypical or suspicious for malignancy. The plaintiff's expert has also failed to articulate the appropriate standard of care. Instead, he simply quibbles with the terminology used by the defendant pathologist and opines in a conclusory fashion that the language in the cytology report did not adequately convey the appropriate level of suspicion. Specifically, the plaintiff's expert has failed to articulate the significance of the difference between the language in the report and the language that he opines should have been used in the report ("suspicious for malignancy" vs. "suspicious for high grade urothelial carcinoma"), thereby rendering his opinion as conclusory.

This opinion (as expressed in such a conclusory manner) is also contrary to the record evidence (see Humphrey, 163 AD3d at 1313; Rivers, 102 AD3d at 43-48; De Jesus, 93 AD3d at 138-140; Myers v Ferrara, 56 AD3d 78, 83-86 [2d Dept 2008]; Douglass, 218 AD2d at 857-858).

4

[* 4]

In particular, the language used by the defendant pathologist ("highly atypical urothelial cells" and "suspicious for malignancy") clearly communicated that the cells were suspicious for cancer. In addition to providing her report, the defendant pathologist further conveyed her suspicion to the treating nurse by calling her to ensure that she had the results (a fact that the plaintiff's expert ignores). The record further indicates that the clinicians understood that the sample did not rule out the possibility of cancer. In fact, they employed further testing and procedures (including a bladder biopsy, cystoscopy, and additional pathology) based in part on the first report. For all these reasons, the plaintiff's proof is insufficient to create a triable issue of fact on the first report.

The plaintiff's expert further challenges the language used in the defendant pathologist's second report (surgical pathology report from April 2015), which contains the findings from the bladder biopsy specimen. This report states that the bladder biopsy specimen was: "Extensively denuded urothelial mucosa with mild to moderate chronic inflammation. No evident dysplasia or malignancy." The pathologist's expert agreed that there was "no evidence of dysplasia (abnormal cell growth) or malignancy (cancerous cells) in the specimen, and that there [was] mild to moderate chronic inflammation." She also agreed that "the specimen was extensively denuded as to the urothelial mucosa, meaning that the specimen contained minimal or no tissue of the upper layer of tissue of the bladder, such that her evaluation of this specimen would not include evaluation for abnormal or malignant cells in that area." She opines that the standard of care "required that [the defendant pathologist] analyze the specimen that was provided to her and to describe what she saw and what she did not see (including the extensively denuded tissue) in her report to the ordering group." She opines that the defendant pathologist "did these things appropriately, allowing the ordering group to use the information she provided together with their clinical information and other test results to care for their patient, Mr. England."

5

In contrast, the plaintiff's expert disagrees with the defendant pathologist's interpretation of the specimen as expressed in the report. In his view, "the urothelial mucosa in the specimen was not just extensively denuded, it was *totally* denuded - stripped of its surface layer and therefore of its characteristics" (emphasis in original). He considers this to be significant, "because to say that it was extensively denuded implies that it was not entirely denuded, and that there were cells with visible characteristics to interpret." He further opines that the reporting of "no evidence of dysplasia or malignancy" differs from his interpretation that "the cells were totally denuded, and therefore lacked any characteristics from which a pathologist could confirm or rule out the presence of dysplasia and/or malignancy."

The plaintiff's expert opines that the defendant pathologist "should have reported that there was no urothelium present to evaluate for dysplasia or malignancy." According to the plaintiff's expert, the standard of care required the defendant pathologist "to report to the clinician if the biopsy specimen was inadequate to allow or confirm the clinical suspicion, if there is one" and that the report should have indicated that "the biopsy specimen was therefore inadequate to rule out a high-grade malignancy, which she should have been concerned about based on the previous cytology she had interpreted." The plaintiff's expert also opines that the defendant pathologist failed to explain in the report that "there was actually no urothelium present to evaluate, and that this specimen was essentially useless in ruling out malignancy."

Based on these conflicting expert opinions, the Court finds that the plaintiff has created a triable issue of fact, rendering summary judgment inappropriate (see Marshall v Rosenberg, 196 AD3d 817, 819 [3d Dept 2021]). Unlike with the first report, the plaintiff's expert has adequately explained the standard of care and articulated a reason with sufficient detail for his opinion regarding the alleged deviation for the second report. Moreover, while the defendant pathologist

6

may be correct that any additional language in the second report would have been superfluous (or perhaps insignificant), the Court cannot reach this conclusion as a matter of law given the competing expert opinions and the limited record on the motion. The defendant pathologist may nonetheless develop these issues during the trial and challenge the necessity and significance of the language advocated by the plaintiff's expert for the second report through an appropriate trial motion, if warranted, based on the trial testimony of the clinicians and the plaintiff's expert.

The Court further disagrees that the recent accusations made against the plaintiff's expert disqualifies him as an expert in this case or otherwise renders his opinion as worthless. Such accusations involve a completely different matter and concern his credibility, which is not before the Court on this summary judgment motion (see Dillenbeck v Shovelton, 114 AD3d 1125, 1127 [3d Dept 2014]; Donohoe v Goldner, 168 AD2d 412, 413-414 [2d Dept 1990]).

Accordingly, a triable issue of fact exists on the malpractice claim against the defendant pathologist based on the competing expert opinions regarding the second report. The motion seeking summary judgment is therefore **DENIED**. To the extent not discussed above, the Court has considered the parties' remaining contentions and finds them to be either unpersuasive or lacking in merit.

This constitutes the Decision and Order of the Court. No costs are awarded. The Court is uploading the original for filing and entry. The Court further directs the parties to serve notice of entry in accordance with the Local Protocols for Electronic Filing for Saratoga County.

So-Ordered.

Dated: July 1, 2024
at Ballston Spa, New York

HON. RICHARD A. KUPFERMAN
Justice Supreme Court

Enter.
Papers Considered:
NYSCEF Doc. Numbers 59-95

7

[* 7]