Launt v Lopasic (2020 NY Slip Op 07260)





Launt v Lopasic


2020 NY Slip Op 07260


Decided on December 3, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 3, 2020

529610

[*1]Kim M. Launt et al., Appellants- Respondents,
v
Natalie W. Lopasic et al., Respondents, and John C. Dalfino et al., Respondents- Appellants.

Calendar Date: October 21, 2020

Before: Egan Jr., J.P., Mulvey, Aarons, Pritzker and Colangelo, JJ.


The Mills Law Firm, LLP, Clifton Park (Christopher K. Mills of counsel), for appellants-respondents.
Maguire Cardona, PC, Albany (Richard Maguire of counsel), for respondents-appellants.
Thorn Gershon Tymann and Bonanni, LLP, Albany (Erin Mead of counsel), for respondent.



Egan Jr., J.P.
Cross appeals from an order of the Supreme Court (Weinstein, J.), entered June 12, 2019 in [*2]Albany County, which, among other things, granted a motion by defendants Natalie W. Lopasic and Northeast Eye Center for summary judgment dismissing the complaint against them.
In 2010, plaintiff Kim M. Launt was diagnosed with pseudotumor cerebri (hereinafter PTC), a condition that causes chronically high intracranial pressure due to the production of excess cerebrospinal fluid (hereinafter CSF), causing headaches and vision problems. Launt initially sought treatment from a neurologist and ophthalmologist in the City of Binghamton, Broome County and, as part of said treatment, was also diagnosed with papilledema or swelling of the optic nerve due to intracranial pressure. Based on her symptoms, Launt sought medical consultations with two neurosurgeons, including defendant John C. Dalfino, who, at all relevant times, was employed by defendants Albany Medical College and Albany Medical Center (hereinafter collectively referred to as the AMC defendants). Dalfino presented Launt with various surgical options designed to drain excess CSF from her brain, including, as relevant here, the placement of a lumboperitoneal shunt (hereinafter LP shunt), which consists of a medical device being surgically inserted near the lumbar spine that drains excess CSF into the abdominal cavity, and the placement of a ventriculoperitoneal shunt (hereinafter VP shunt), which consists of a device being surgically inserted into the brain to drain excess CSF into the abdominal cavity. Based on Launt's concerns with respect to the invasiveness of the VP shunt procedure, she ultimately elected to pursue an LP shunt, which procedure Dalfino performed in January 2012.
Following the insertion of the LP shunt, Launt continued to experience PTC symptoms of varying severity, including headaches, vision problems, nausea, vomiting and dizziness. Dalfino made numerous adjustments to the LP shunt valve and also performed multiple surgical revisions of the LP shunt, with varying success. In April 2013, Dalfino referred Launt to defendant Natalie W. Lopasic, an ophthalmologist employed by defendant Northeast Eye Center (hereinafter collectively referred to as the NEC defendants), for ophthalmological treatment, to evaluate her optic nerves and document whether papilledema was present. Launt treated with Lopasic from April 2013 through August 2014. According to Lopasic, Launt never presented with papilledema and her visual symptoms remained stable. Notwithstanding, Launt continued to suffer from symptoms of PTC and, as a result, she discontinued her treatment with Lopasic in August 2014 and her treatment with Dalfino in October 2014. Launt thereafter consulted with another neurologist who, in November 2014, diagnosed her with papilledema and, following consultation with another neurosurgeon, she underwent surgery to remove her LP shunt and insert a VP shunt in December 2014. According to Launt, with the exception of a singular VP shunt revision surgery in 2017, the VP shunt has effectively controlled her PTC symptoms.
In August 2016, Launt and her spouse, derivatively, commenced this medical malpractice action against both the NEC defendants and the AMC defendants, alleging, among other things, that they failed to diagnose, treat and monitor Launt's PTC, brain and optic nerve swelling, intracranial pressure and otherwise were "careless, reckless and negligent," deviating from accepted standards of practice. The NEC defendants and the AMC defendants separately answered and, following joinder of issue, independently moved for summary judgment dismissing the complaint against them, which motions plaintiffs opposed. Supreme Court denied the AMC defendants' motion in its entirety, finding that [*3]material issues of fact existed with respect to whether Dalfino departed from the appropriate standard of care, but granted the motion by the NEC defendants, finding that the affidavit submitted by plaintiffs' expert ophthalmologist failed to establish that Lopasic erred in failing to diagnose Launt with papilledema. Plaintiffs appeal, and the AMC defendants cross-appeal.
As the moving parties, it was the NEC defendants' burden to establish that they "did not deviate from the accepted standards of practice in treating [Launt] or, if [they] did so, that such deviation was not the proximate cause of [Launt]'s injuries" (Furman v Desimone, 180 AD3d 1310, 1311 [2020]). Upon establishment of a prima facie case, the burden shifts to plaintiffs "to come forward with proof that could establish a deviation from accepted medical practice and that such alleged deviation was the proximate cause of [Launt]'s injuries, so as to demonstrate the existence of a triable issue of fact" (Yerich v Bassett Healthcare Network, 176 AD3d 1359, 1361 [2019]; see Plourd v Sidoti, 69 AD3d 1038, 1039 [2010]).
In support of their motion, the NEC defendants submitted, among other things, the deposition testimony of Launt and Lopasic, an affidavit from Lopasic, and Launt's medical records. The evidence demonstrates that at Launt's initial consultation with Lopasic in April 2013, she presented with subjective complaints of, among other things, decreased peripheral vision in her right eye, pain behind both eyes, pressure in the back of her head and light sensitivity. Lopasic performed a full neuroophtalmological exam, including a full dilated eye exam, visual field testing and an "OTC" test to take images of the optic nerves. According to Lopasic, the objective testing that was performed established that the optic nerve in Launt's right eye appeared to be raised; however, "[t]he mild nasal elevation of the optic nerve" that she observed was normal and indicative only of pseudopapilledema, and that Launt had no swelling of the optic nerves nor any signs of papilledema. Lopasic did note that Launt's visual field testing showed constriction of Launt's peripheral vision; however, given that the results of the visual field testing were subjective and inconsistent over time as well as with the objective testing that she performed, she concluded that the results of these tests were unreliable and ruled out papilledema as a cause. Lopasic continued to treat and monitor Launt over the course of the ensuing 16 months, including conducting additional testing in line with the appropriate standard of care, and affirmed that the results of all the objective testing of Launt's optic nerves during such time were within the normal range, her intraocular pressure remained normal, her visual symptoms remained stable and she showed no signs of papilledema nor optic nerve swelling caused by intracranial and/or intraocular pressure. Accordingly, based on the evidence submitted, the NEC defendants met their prima facie burden of demonstrating that Lopasic did not depart from the accepted standard of care in treating Launt nor did Launt sustain any injury to her optic nerves or worsening of her condition based upon the treatment and care she received from these defendants (see Simpson v Edghill, 169 AD3d 737, 738 [2019]).
In opposition to the motion, plaintiffs failed to raise a triable issue of fact (see generally Alvarez v Prospect Hosp., 68 NY2d 320, 324-325 [2010]). Although plaintiffs submitted the affidavit of an expert ophthalmologist who opined that Lopasic deviated from the applicable standard of care by disregarding the subjective results of Launt's visual field tests and failing to create a treatment plan for papilledema, [*4]the expert provided no specific assertions indicating that the results of the visual field tests, in and of themselves, were indicative of papilledema, nor did he identify any other diagnosable condition. He further failed to address the fact that, at no point during Launt's course of treatment, did Lopasic ever observe any signs of papilledema or specifically diagnose her as suffering from same (see Lowe v Japal, 170 AD3d 701, 703 [2019]; Tsitrin v New York Community Hosp., 154 AD3d 994, 996 [2017]).[FN1] Lopasic, on the other hand, indicated that Launt's visual symptoms remained stable throughout her treatment and explained that she did not prepare a treatment plan for papilledema because Launt never showed signs of suffering from said diagnosis while under her treatment and care. Accordingly, we find that Supreme Court appropriately granted summary judgment dismissing the complaint against the NEC defendants.
Turning to the AMC defendants' cross appeal, we are unpersuaded that Supreme Court erred in not, sua sponte, utilizing CPLR 3212 (g) to limit the contested issues of fact for trial. As relevant here, CPLR 3212 (g) provides that, "[i]f a motion for summary judgment is denied or is granted in part, the court, by examining the papers before it and, in the discretion of the court, . . . shall, if practicable, ascertain what facts are not in dispute or are incontrovertible. It shall thereupon make an order specifying such facts and they shall be deemed established for all purposes in the action." CPLR 3212 (g) is a seldom used procedural device contained within CPLR 3212 that serves alongside its more frequently used legal cousins — the motions for summary judgment and partial summary judgment. It can serve as a sort of consolation prize for the unsuccessful movant for summary judgment wherein the main motion is denied but a judicial finding of those facts not in dispute is achieved for potential later use at trial.
Here, the AMC defendants did not request that Supreme Court make a CPLR 3212 (g) ruling in the event that their motion for summary judgment was denied, nor were they required to (see [*5]Oluwatayo v Dulinayan, 142 AD3d 113, 120 [2016]; E.B. Metal & Rubber Indus. v County of Washington, 102 AD2d 599, 603 [1984]; compare Clause v Globe Metallurgical, Inc., 160 AD3d 1463, 1464 [2018]).[FN2] Supreme Court had complete discretion to undertake such an inquiry, sua sponte, and we decline to disturb its decision not to invoke CPLR 3212 (g). Although this Court may issue a de novo CPLR 3212 (g) ruling, our independent review of the record leads us to the conclusion that such an inquiry would be impracticable, and we decline the invitation to do so. To the extent not specifically addressed, plaintiffs' remaining contentions have been reviewed and found to be without merit.
Mulvey, Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: We reject the assertion by plaintiffs and plaintiffs' expert ophthalmologist that Launt's medical regards "clearly note[d] a diagnosis of papilledema" for which a treatment plan was necessary. Lopasic explained that she was consulted to evaluate Launt's optic nerves and look for changes or symptoms in her condition consistent with papilledema and, therefore, any notation in the medical records regarding said diagnosis was for purposes of insurance coverage and did not represent an independent diagnosis on her behalf, as Launt never presented with papilledema while under her care. Moreover, although Lopasic acknowledged that one of Launt's treating neurologists noted the presence of papilledema, she explained that the fundoscopic exam that the neurologist performed in this regard was insufficient to confirm a diagnosis of papilledema, as opposed to the battery of objective testing that she had performed.

Footnote 2: The better practice for a party seeking the benefit of CPLR 3212 (g) would be to specifically request in the motion papers that such relief be granted, in the alternative, in the event that the motion for summary judgment is either denied or granted only in part (see Siegel, NY Prac, § 286 at 542 [6th ed 2020]; David D. Siegel, Practice Commentaries, McKinney's Cons Law of NY, Book 7B, CPLR C3212:35).