Cho-Bodnar v Adirondack Maxillofacial Surgery (2023 NY Slip Op 01932)

Cho-Bodnar v Adirondack Maxillofacial Surgery

2023 NY Slip Op 01932

Decided on April 13, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 13, 2023

535031
[*1]Sun Ae Cho-Bodnar et al., Respondents,
v
Adirondack Maxillofacial Surgery et al., Appellants, et al., Defendant.

Calendar Date:February 22, 2023

Before:Garry, P.J., Egan Jr., Aarons, Reynolds Fitzgerald and Ceresia, JJ.

O'Connor, O'Connor, Bresee & First, PC, Albany (Emily A. Phillips of counsel), for Adirondack Maxillofacial Surgery and another, appellants.
Goldberg Segalla, Buffalo (Lisa M. Robinson of counsel), for Alan D. Goldman, appellant.
The Rehfuss Law Firm, PC, Latham (Stephen J. Rehfuss of counsel), for respondents.

Garry, P.J.
Appeal from an order and judgment of the Supreme Court (Kimberly A. O'Connor, J.), entered January 19, 2022 in Albany County, which partially denied defendants' motions for summary judgment dismissing the complaint.
In April 2016, plaintiff Sun Ae Cho-Bodnar presented to defendant Alan D. Goldman, a general dentist then employed by defendant Kids & Family Dental, complaining of an unstable and uncomfortable partial lower denture and inquiring about implants. Goldman ultimately recommended the placement of two implants on the lower left side at teeth 20 and 22 with a three-unit bridge and a new partial lower denture that would cover teeth 18, 19, 23, 24, 25 and 26. He referred Cho-Bodnar to defendant Gurinder Wadhwa, an oral surgeon with defendant Adirondack Maxillofacial Surgery (hereinafter AMS), for a consult. When Cho-Bodnar presented to AMS, she was seen by Wadhwa's partner, Pierpaolo Preceruti, who recommended the placement of between five to eight implants to enable a fixed prosthetic. Goldman then instructed Cho-Bodnar to return to AMS to see Wadhwa specifically. In September 2016, Wadhwa recommended the extraction of teeth 27, 28 and 29 and the placement of two implants at teeth 22 and 27 with bone grafting, a treatment option that would allow for the placement of a full lower denture that would be anchored once the implants integrated into the bone. On the day of Cho-Bodnar's December 2016 surgery, Wadhwa learned that Goldman had rejected his recommendation; after confirming same, Wadhwa placed implants at 20 and 22, in accord with Goldman's treatment plan. In April 2017, Wadhwa performed the second stage of the surgery, uncovering the implants and placing healing abutments for the bridge. Thereafter, Cho-Bodnar continued to treat with Goldman, who prepared and seated the bridge and the partial lower denture and made a number of allegedly ineffective adjustments thereto.
In January 2018, Cho-Bodnar began treating with a new general dentist, Shiloh Lieberman, presenting with complaints of pain and about the appearance of her newly-installed bridge. To avoid the need for a lower partial denture altogether, Lieberman placed additional implants at teeth 19, 23, 25 and 30. In May 2018, Lieberman informed Cho-Bodnar that the prognosis for her lower left implants was poor, and plaintiff therefore elected to undergo a full arch restoration procedure. Between July 2018 and April 2020, plaintiff underwent various procedures performed by Lieberman, including the removal of the implants placed by Wadhwa and those placed at teeth 23, 25 and 30, extraction of Cho-Bodnar's remaining lower teeth at 27, 28 and 29 and placement of five new implants in locations to support the full arch prosthesis.
Thereafter, Cho-Bodnar and her spouse, derivatively, commenced this action, setting forth claims of dental malpractice and lack of informed consent and alleging that Goldman's treatment plan was destined for failure, that Wadhwa therefore negligently went [*2]along with it, that Wadhwa negligently installed the implants at teeth 20 and 22 and that both professionals failed to adequately address the improperly placed implants and the pain caused thereby. Following joinder of issue, defendants moved for summary judgment dismissing the complaint, which plaintiffs opposed. Supreme Court granted the motions as to any informed consent claims but otherwise denied them. Goldman, Wadhwa and AMS appeal.
As the proponents of their respective motions for summary judgment in this dental malpractice action, defendants "bore the initial burden of establishing that there was no departure from accepted standards of practice or that plaintiff[s were] not injured thereby" (Menard v Feinberg, 60 AD3d 1135, 1136 [3d Dept 2009] [internal quotation marks and citation omitted]; see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). To that end, defendants came forward with, among other proof, the deposition testimony of Goldman, Wadhwa and Lieberman and the affidavits of two experts, Joseph DiDonato III, a licensed general dentist, and Douglas Smail, a board-certified oral and maxillofacial surgeon. Initially, Goldman testified that he presented a number of treatment options to Cho-Bodnar, including a full lower denture and multiple restorative options utilizing implants. In his view, a full lower denture would not have addressed Cho-Bodnar's concerns about stability and the ideal in her case would have been a full arch fixed prosthesis supported by implants. However, he further alleged that, following several discussions as to what she was able to afford and commit to, Cho-Bodnar elected to proceed with a transitional, or staged, approach beginning with two implants supporting a bridge and a remake of her partial denture. If all went according to plan, she could do full arch implants down the road. Wadhwa testified that, apart from the treatment plan recommended by his partner, he viewed his plan for a full lower denture and extraction of Cho-Bodnar's remaining, compromised lower teeth to be the best course of action for her. However, he ultimately deferred to Goldman, as the referring dentist, in proceeding with treatment. Both professionals acknowledged that Cho-Bodnar complained of pain following the implant procedures, but both found such pain to be common postsurgery.
Lieberman testified that he also provided Cho-Bodnar with a number of treatment options, and she again selected a staged approach. He accordingly placed four additional implants, along with an interim bridge. At a subsequent appointment, Lieberman performed an exploratory procedure to assess Cho-Bodnar's lower left quadrant and discovered, with respect to the implants at teeth 20 and 22, graying of the thinning tissue, inflammation and a significant amount of exposure of at least one of the implants through the jawbone. This included exposure above the jawbone, where the threads of the implant could be seen protruding near the gum line, and exposure well [*3]below the gum line on the exterior side of the jawbone; radiographs revealed that there was a lack of bone on the interior side of the jawbone as well. In view of that exposure, Lieberman considered the longevity of the implants at teeth 20 and 22 and the three-unit bridge to be in question, including because of the possibility of infection and periodontal disease. Rather than continue to patch up the problematic area via grafting procedures, Cho-Bodnar opted to pursue a full arch procedure. Lieberman accordingly removed the recent implants he placed at teeth 23, 25 and 30, which he was able to unscrew as they had not yet fully integrated into the bone. He also removed the implants at teeth 20 and 22; notwithstanding the observed loss of integration as to those implants, Lieberman concluded that it was safest to cut out the implants with a small hole saw given that there were some bony attachments. Lieberman was then able to more optimally locate new implants to support the final prosthesis.
As for the experts, based on his education, professional training and experience and a review of the relevant dental records and depositions, DiDonato opined that Goldman appropriately considered available treatment options and, based on Cho-Bodnar's financial ability and psychological mindset, developed a treatment plan in accordance with dentistry standards, which widely accept the use of three-unit bridges and phased plans for restorative dental work. He further opined that any pain and suffering experienced by Cho-Bodnar was a result not of the work performed but by her continued struggle to wear a lower partial denture, which, when compared to the stability and function of an implant-supported prosthetic, became even more apparent. In DiDonato's view, had Cho-Bodnar continued to treat with Goldman, any such discomfort would have been remedied by her new appliance, which was being manufactured at the time that she left Goldman's practice. Smail opined, based on similar considerations, that Wadhwa did not commit malpractice by carrying out Goldman's treatment plan, asserting that it is a common and accepted practice for an oral surgeon to defer to a referring general dentist in designing a treatment plan that is within accepted standards of practice. Smail concluded that the implants placed by Wadhwa were integrated, nonsymptomatic, stable, properly aligned and only removed because Cho-Bodnar chose a different treatment plan. He also rejected Cho-Bodnar's complaints of pain, finding that pain is a recognized risk of dental implants. As to the issue of exposed implant threads, Smail opined that visible threads are not indicative of anything wrong with an implant, adding that further bone grafting could have been performed to address the exposure. Because both experts concluded that the implants at teeth 20 and 22 were not improperly placed, both also refuted the allegation that their respective professional committed malpractice by failing to recognize the [*4]improper placement or address the pain allegedly caused thereby. This proof satisfied defendants' initial burden, and the burden thus shifted to plaintiffs to establish issues of fact as to a departure from accepted dental practice and a nexus between the malpractice and injuries alleged (see Menard v Feinberg, 60 AD3d at 1137; see also Alvarez v Prospect Hosp., 68 NY2d at 324).
Plaintiffs initially proffered their own deposition testimony and affidavits, in which they denied any conversations with defendants about the cost of treatment and the assertion that Cho-Bodnar was unwilling to remove her remaining lower teeth. They instead asserted that they accepted Goldman's treatment plan because it was presented as the best option to address Cho-Bodnar's dental issues. Plaintiffs also came forward with the affidavit of an expert, Christopher Lyons, a licensed general dentist and clinical instructor, who, based on his education, training and experience and review of pertinent medical records, depositions, the affidavits of DiDonato and Smail and his own physical examination of Cho-Bodnar, opined that Goldman selected a treatment plan that was destined for failure and protracted pain and discomfort. In Lyons' opinion, a removable lower partial denture supported by implants on only one side cannot withstand the pressure associated with chewing over a prolonged period of time. He added that wearing a unilateral partial denture following an implant surgery also puts unnecessary stress and pressure on newly-placed implants. In view of the dental issues that Cho-Bodnar presented with, Lyons concluded that appropriate treatment plans within the standard of care included a full lower denture following extractions, a full lower denture with optional implants at teeth 22 and 27, four implants and a hybrid denture following extractions or six to eight implants with fixed bridge work. As to Wadhwa, Lyons opined that he installed implants 20 and 22 in such a manner that prevented proper integration and left the implants and surrounding tissue and bone exposed to disease and bacteria. Lyons viewed the exposure of implant threads as evidence of malpractice here, where there was inadequate bone in the first instance. He concluded that the exposed threads would have been extremely painful and were the cause of the constant, throbbing pain reported by Cho-Bodnar, pain which was alleviated following her treatment with Lieberman.
Goldman, Wadhwa and AMS assert that the opinions expressed by plaintiffs' expert were speculative and conclusory. Even if Lyons was "not as precise as we would prefer" in some respects (Busch v Sherman, 209 AD3d 1230, 1233 [3d Dept 2022] [internal quotation marks and citation omitted]), viewing the evidence in the light most favorable to plaintiffs as the nonmoving parties (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]), their expert affidavit was substantively sufficient to withstand defendants' motions. The affidavit raised triable [*5]issues of fact as to whether Goldman's treatment plan, carried out by Wadhwa, was medically acceptable under the circumstances presented, whether the implants at 20 and 22 were negligently installed and whether any such deviations proximately caused the injuries alleged. Thus, those branches of defendants' motions that sought to dismiss plaintiffs' claims of dental malpractice were properly denied (see Menard v Feinberg, 60 AD3d at 1137-1138; see also Schrader v Nichols, 198 AD3d 1153, 1155 [3d Dept 2021]; compare Hartt v Kramer, 155 AD3d 560, 560 [1st Dept 2017]).
Egan Jr., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order and judgment is affirmed, with costs.