Bardaglio v Edward G. Bryant, IV, O.D., PLLC (2023 NY Slip Op 03380)

Bardaglio v Edward G. Bryant, IV, O.D., PLLC

2023 NY Slip Op 03380

Decided on June 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 22, 2023

534856
[*1]Peter Bardaglio et al., Respondents,
v
Edward G. Bryant, IV, O.D., PLLC, Doing Business as Clarity Eye Care with Dr. Bryant, et al., Appellants.

Calendar Date:May 2, 2023

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher and McShan, JJ.

O'Connor, O'Connor, Bresee & First, PC, Albany (Carol E. Crummey of counsel), for Edward G. Bryant, IV, O.D., PLLC and another, appellants.
Connors LLP, Buffalo (Michael J. Roach of counsel), for Kirk Stephens Hinkley IV and another, appellants.
DeFrancisco & Falgiatano, LLP, East Syracuse (Anna Badalian of counsel), for respondents.

McShan, J.
Appeal from an order of the Supreme Court (Joseph A. McBride, J.), entered February 22, 2022 in Tompkins County, which denied defendants' motions for summary judgment dismissing the complaint.
In 2018, plaintiff Peter Bardaglio was referred to defendant Edward G. Bryant IV at his practice — defendant Edward G. Bryant, IV, O.D., PLLC, doing business as Clarity Eye Care with Dr. Bryant (hereinafter collectively referred to as the Bryant defendants) — to treat his recurrent corneal erosion, which he had previously suffered in his left eye. Over the course of receiving care from Bryant, Bardaglio developed the same condition in his right eye, and his care with Bryant for the condition continued through November 2018. On Thursday, November 22, 2018, Bryant's office was closed for the Thanksgiving holiday with plans to resume normal business hours after the holiday weekend. Bryant left his personal cell phone number for patients to contact him in case of emergency and, at 2:27 p.m., Bardaglio called Bryant complaining of a headache, right eye pain and blurred vision. Bryant instructed him to wear a bandage contact lens and begin using previously prescribed antibiotic eye drops. Bryant also told Bardaglio to call him later in the day with any updates to his condition. Bardaglio called Bryant again at 7:10 p.m. to report that his symptoms had remained the same and, according to his treatment notes, Bryant offered to arrange for an appointment for Bardaglio to see a different eye doctor the next day. Later that evening, Bardaglio drove himself to the emergency department at Cayuga Medical Center (hereinafter CMC) and checked in around 10:30 p.m., reporting severe pain in his right eye. At CMC, Bardaglio was seen by defendant Elizabeth Lorenc, a physician's assistant under the supervision of attending physician defendant Kirk Stephens Hinkley IV (hereinafter collectively referred to as the Lorenc defendants). Lorenc performed a Wood's lamp examination on Bardaglio's right eye and provided a primary diagnosis of corneal erosion. Bardaglio was then discharged in the early morning hours of November 23 with pain medication and instructions to follow up with an eye doctor. That morning, Bryant contacted a colleague to see if she was available to see Bardaglio. In response, the provider advised that she could see Bardaglio at 11:00 a.m.; however, Bryant advised that it would not be necessary. After the weekend, Bardaglio was seen by Bryant on November 26, at which time Bryant diagnosed Bardaglio with an infection in his right eye and referred him to Upstate University Hospital on an emergent basis. Bardaglio was diagnosed with a pseudomonas aeruginosa infection and corneal ulcer in his right eye, which necessitated various interventions, including a tectonic corneal transplant.
Bardaglio, and his spouse derivatively, then commenced this action alleging that Bryant's determination to provide treatment over the phone without the ability to conduct a physical examination[*2], the directive to place a bandage contact on Bardaglio's eye while he was exhibiting symptoms of infection, and the failure to refer Bardaglio to an ophthalmologist for an emergency visit during their various conversations fell below the applicable standard of care. As to the Lorenc defendants, plaintiffs allege that the failure to utilize a slit lamp to properly diagnose Bardaglio, the failure to refer Bardaglio to an ophthalmologist and the failure to ensure that Bardaglio had removed his contact fell below the standard of care.[FN1] Defendants separately moved for summary judgment dismissing the complaint, and Supreme Court denied the motions, finding that the competing expert affidavits submitted by the parties raised triable issues of fact. Defendants appeal.
We affirm. "As the moving parties on their respective summary judgment motions, defendants bore the initial burden of presenting factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut the claim of malpractice by establishing that they complied with the accepted standard of care or did not cause any injury to the patient" (Schwenzfeier v St. Peter's Health Partners, 213 AD3d 1077, 1078 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Launt v Lopasic, 189 AD3d 1740, 1742 [3d Dept 2020]). Turning first to the Bryant defendants, we find that their submission was sufficient to meet their prima facie burden. In support of their motion, the Bryant defendants submitted, among other proof, the deposition testimony of Bardaglio and Bryant. Bardaglio's testimony reflects that, during his initial contact with Bryant in the early afternoon of November 22, 2018, the two discussed the potential that Bardaglio was suffering from another corneal erosion based upon Bardaglio's described symptoms. Bryant then advised Bardaglio to utilize the antibiotic drops that he already had and to place the bandage contact in his eye. For his part, Bryant testified that Bardaglio had relayed to him that he was experiencing a severe headache, pain, blurred vision, tearing and watery eyes. As to the discussions on the morning of November 23, Bryant stated that he told Bardaglio that he had arranged for him to see another provider around 11:00 a.m., at which point Bardaglio informed him that he had gone to the emergency department the night before, that they had confirmed a large corneal abrasion, and that he wanted to defer his follow-up appointment with the other provider because he was feeling "a little better." Bryant's records, in sum and substance, support his account that he had arranged a visit for Bardaglio with another provider, and the text message exchange reflects that Bryant first texted the other provider the morning of November 23, and she advised that she could see Bardaglio at 11:00 a.m. However, Bryant responded that Bardaglio was "doing a bit better today so I think he is going to follow up with me on Monday."
The Bryant defendants [*3]also submitted the affidavit of James Thimons, an optometrist, who concluded that the treatment modalities provided to Bardaglio by Bryant were within the standard of care and that Bryant was not responsible for the injuries suffered by Bardaglio. Thimons opined, in sum and substance, that it was reasonable and within the standard of care for Bryant to instruct Bardaglio, given the symptoms Bardaglio described on the phone and his history of prior treatment, to replace his bandage contact and begin antibiotics to treat his symptoms as a probable recurrent corneal erosion, with the directive that Bardaglio report any changes in his condition over the weekend. In our view, the foregoing was sufficient to satisfy the Bryant defendants' prima facie burden and, "[a]ccordingly, the burden shifted to plaintiff[s] to present expert medical opinion evidence that there was a deviation from the accepted standard of care and that this departure was a proximate cause of [Bardaglio's] injury" (Fischella v Saint Luke's Cornwall Hosp., 204 AD3d 1343, 1344 [3d Dept 2022]; see Grzelecki v Sipperly, 2 AD3d 939, 941 [3d Dept 2003]).
In response, plaintiffs submitted the expert affidavit of an ophthalmologist, who opined that Bryant's care deviated from the appropriate standard of care in two relevant respects. Specifically, the ophthalmologist concluded that it was a deviation from the standard of care to provide medical advice to Bardaglio over the phone without the ability to properly examine his eye and symptoms. In connection with this opinion, the ophthalmologist concluded that it was a deviation from the standard of care to direct Bardaglio to replace the bandage contact, which created an environment for the infection to fester and worsen. The ophthalmologist further opined, concerning Bardaglio and Bryant's post-hospitalization conversation, that Bryant deviated from the standard of care by not insisting that Bardaglio attend a consultation based upon his recent hospitalization and his use of pain medication, which could be masking the symptoms of infection. Finally, the ophthalmologist stated that the foregoing deviations caused the infection to worsen, which then precipitated severe injuries to Bardaglio's eye and the resulting need for treatment.
We reject the characterization that the ophthalmologist's affidavit was speculative and conclusory, as it adequately referenced specific facts and testimony in the record in a sufficient manner to support the expert's opinions (see Doucett v Strominger, 112 AD3d 1030, 1033 [3d Dept 2013]; compare Martino v Miller, 97 AD3d 1009, 1011 [3d Dept 2012]). Moreover, at this stage, we cannot definitively resolve those issues pertaining to the substance of conversations between Bryant and Bardaglio when viewing the record evidence in the light most favorable to plaintiffs as the nonmovants, as the conversations implicate credibility issues more appropriate for jury resolution (see Marshall v Rosenberg, 196 AD3d 817, 822[*4][3d Dept 2021]). Viewing the evidence through that lens, we find that plaintiffs' submission in opposition to the motion raised a triable issue of fact concerning whether Bryant's care "was medically acceptable under the circumstances presented," particularly with respect to the dispensing of medical advice over the phone and the directive to utilize the bandage contact despite the presence of symptoms that could stem from an infection, which was later confirmed when Bryant examined Bardaglio with the slit lamp after the holiday weekend (Cho-Bodnar v Adirondack Maxillofacial Surgery, 215 AD3d 1101, 1106 [3d Dept 2023]; see Cole v Chun, 185 AD3d 1183, 1187 [3d Dept 2020]). Furthermore, we find that the ophthalmologist's affidavit adequately addresses whether the deviation potentially played a role in exacerbating the infection that purportedly existed at the time Bardaglio first contacted Bryant (see Tardi v Casler-Bladek, 212 AD3d 904, 906 [3d Dept 2023]). To the extent that the Bryant defendants assert that Bardaglio's decision to go to the hospital or decline further treatment until Monday negated any causation on their part, it is our view that such issue cannot be resolved at this juncture (see Mazella v Beals, 27 NY3d 694, 706 [2016]; Ruddy v Nolan, 37 AD3d 694, 695-696 [2d Dept 2007]; Nassimi v Petrikovsky, 37 AD3d 676, 677 [2d Dept 2007]; see also Dombrowski v Moore, 299 AD2d 949, 951 [4th Dept 2002]). We therefore agree with Supreme Court's determination that the competing expert affidavits raised a triable issue of fact with respect to Bryant's care.
Turning to the Lorenc defendants, we similarly find that they met their prima facie burden on their motion and shifted the burden to plaintiffs to raise a triable issue of fact in response (see Schrader v Nichols, 198 AD3d 1153, 1154-1155 [3d Dept 2021]). The Lorenc defendants submitted, among other things, the deposition testimony of Lorenc, who stated that her clinical impression, based upon Bardaglio's history and physical exam, was that he was suffering from a corneal erosion. Lorenc stated that she initially performed a visual inspection of Bardaglio's eye before completing a Wood's lamp exam. According to Lorenc, in order for her to perform the examination, she would have removed Bardaglio's contact and would not have instructed him to put the contact back in. Lorenc acknowledged that the instruction was not in the discharge papers, but that she would have advised him not to replace his contact verbally after removing it for the examination. Lorenc noted that she had prescribed pain medication in anticipation of Bardaglio following her instruction to follow up with his regular provider in the morning. Lorenc also included a referral to a different ophthalmologist as a "backup" because it was her opinion that Bardaglio needed to be seen by an eye doctor that day. The medical records from the hospital confirm the referral.
Hinkley's affidavit confirmed Lorenc's account of the care provided [*5]to Bardaglio and opined that such care fell within the applicable standard of care for an emergency physician. Hinkley opined that Lorenc properly performed the examination with a Wood's lamp, confirming a corneal abrasion or erosion. Hinkley stated that a slit lamp examination was "wholly superfluous" in Bardaglio's case, as the Wood's lamp examination had already confirmed the presence of a corneal abrasion or erosion and appropriate follow up was in place. Given the follow-up plan of care that was in place for Bardaglio and the fact that he had communicated with his eye specialist earlier in the day, Hinkley opined that there was no need to transfer Bardaglio to a hospital with ophthalmology coverage or refer him to an eye doctor on a more expeditious basis. Moreover, according to Hinkley, any causal link was severed once Bardaglio spoke with Bryant after he was discharged from CMC and elected not to engage in any follow-up care until the following Monday.
In response, plaintiffs submitted the affidavit of an emergency physician, who opined that Bardaglio required a thorough eye evaluation when he was admitted at CMC given the severity of Bardaglio's eye pain, his elevated blood pressure, the redness of his eye, the associated head pain, the change in vision and the fact that he was seeking emergency treatment. According to the physician, the standard of care required a slit lamp examination and the failure to provide same was a deviation from generally accepted medical standards. Further, the physician stated that the fact that Bardaglio had a follow-up appointment scheduled in the morning did not excuse the necessity of a thorough eye examination, and that Lorenc's diagnosis of recurrent corneal erosion was incorrect. The physician insisted that Lorenc should have contacted Hinkley about arranging a more thorough eye examination if she was unable to perform one herself. The physician proffered that, had a slit lamp examination been performed, Bardaglio's infection would have been diagnosed and his damages could have been avoided. Further, adding to their contentions on causation, plaintiffs submitted a separate affidavit from the ophthalmologist, who opined, in sum and substance, that had Bardaglio undergone a thorough eye examination on November 22, 2018, his infection would have been diagnosed and he would have received timely treatment, which would have avoided the significant injuries to the eye. Such conclusion, according to the ophthalmologist, was further evidenced and supported by the fact that Bardaglio had become symptomatic on November 22 and he was ultimately diagnosed as having a severe eye infection on November 26.
We agree with Supreme Court that there are issues of fact concerning the adequacy of the examination performed by Lorenc. Specifically, plaintiffs' experts' affidavits are sufficient to raise a material issue of fact as to whether a slit lamp examination was the appropriate standard of care and whether doing so would [*6]have identified an infection and prevented further harm (see Schwenzfeier v St. Peter's Health Partners, 213 AD3d at 1083-1084; Tardi v Casler-Bladek, 212 AD3d at 906; see generally Knish v Meehan, 291 AD2d 647, 648-649 [3d Dept 2002]; cf. Snyder v Simon, 49 AD3d 954, 956 [3d Dept 2008]). We reject the Lorenc defendants' assertion that the ophthalmologist was not competent to offer an opinion as to their care. The affidavit of the ophthalmologist is clear that it pertained specifically to causation rather than the standard of care employed by the Lorenc defendants and we discern nothing in the record that would render the opinion inadmissible (see Bongiovanni v Cavagnuolo, 138 AD3d 12, 18 [2d Dept 2016]). Moreover, "any alleged lack of skill or experience [on the part of the ophthalmologist] goes to the weight to be given to the opinion, not its admissibility" (Carter v Tana, 68 AD3d 1577, 1580 [3d Dept 2009] [internal quotation marks and citation omitted]). Finally, for the same reasons we previously discussed concerning the Bryant defendants' motion, we find no merit to the argument raised by the Lorenc defendants concerning a break in causation (see Ruddy v Nolan, 37 AD3d at 695). Defendants' remaining contentions, to the extent they are not specifically addressed, have been considered and found unavailing.
Aarons, J.P., Pritzker, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Hinkley was named as a defendant based upon his alleged failure to adequately supervise Lorenc as the attending physician on duty at the time of Bardaglio's admission.