Kelly v Herzog (2024 NY Slip Op 01137)

Kelly v Herzog

2024 NY Slip Op 01137

Decided on February 29, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 29, 2024

535732
[*1]Angela Kelly, Appellant,
v
Thomas Herzog et al., Respondents.

Calendar Date:January 9, 2024

Before:Egan Jr., J.P., Aarons, Pritzker, Reynolds Fitzgerald and Mackey, JJ.

Fiedler Deutsch, LLP, White Plains (Adam E. Deutsch of counsel), for appellant.
Burke, Scolamiero & Hurd, LLP, Albany (Monique B. McBride of counsel), for respondents.

Reynolds Fitzgerald, J.
Appeal from an order of the Supreme Court (Mary M. Farley, J.), entered July 14, 2022, in St. Lawrence County, which granted defendants' motion for summary judgment dismissing the complaint.
In August 2017, plaintiff consulted with defendant Thomas Herzog, an orthopedist, regarding a knee injury. Herzog recommended arthroscopic surgery to repair what he believed at the time was a torn meniscus, and she agreed. On August 14, 2017, Herzog repaired a partial tear of plaintiff's anterior cruciate ligament. At plaintiff's follow-up appointment one week later, she complained of severe pain and presented with both swelling of, and limited range of motion in, her knee, as well as hyperemia of her entire lower extremity. Herzog diagnosed her with mild reflex sympathetic dystrophy (hereinafter RSD). Plaintiff had two further appointments with Herzog in September and October 2017. At these appointments, plaintiff reiterated her complaints concerning her knee, namely, significant pain, swelling, discoloration and limited range of motion. Herzog referred plaintiff to physical therapy and continued in his diagnosis of RSD. Plaintiff also presented with similar complaints on multiple occasions at defendants Claxton Medical, P.C. and Claxton-Hepburn Medical Center throughout September and October 2017.[FN1] These defendants prescribed pain medication and advised plaintiff to contact her surgeon. In December 2017, in severe pain and with her knee now locked at a 90-degree angle, plaintiff went to Claxton Medical Pain Management. There, after observing that her knee was hot to the touch, purplish-red in color and that plaintiff's leg exhibited pitting edema, she was sent on an emergent basis to the University of Rochester Medical Center. Once there, she was diagnosed with septic arthritis in her knee due to a staphylococcus aureus infection. Plaintiff underwent surgery for knee debridement and irrigation, bone resection and antibiotic spacer placement. She subsequently underwent a total knee replacement in May 2018.
In 2019, plaintiff commenced this medical malpractice action alleging defendants had deviated from the standard of care and that said deviations caused plaintiff's injuries. Following joinder of issue and discovery, defendants moved for summary judgment. Supreme Court granted the motion finding that defendants met their prima facie burden and that plaintiff's expert failed to raise a triable question of fact as to causation. Plaintiff appeals.
As the proponents of a motion for summary judgment in a medical malpractice action, defendants bore the initial burden of demonstrating that their treatment of plaintiff did not deviate from the accepted standard of care, or, if they did so, that such deviations were not the proximate cause of plaintiff's injuries (see Young v Sethi, 188 AD3d 1339, 1340 [3d Dept 2020], lv denied 37 NY3d 902 [2021]; Furman v Desimone, 180 AD3d 1310, 1311 [3d Dept 2020]). "Bare conclusory assertions with no factual relationship to the [*2]alleged injury are insufficient to establish that the cause of action has no merit so as to entitle defendant[s] to summary judgment" (Pullman v Silverman, 28 NY3d 1060, 1062 [2016] [internal quotation marks, brackets, ellipsis and citation omitted]).To meet this burden, "defendants must present factual proof, generally consisting of affidavits, deposition testimony and medical records" (Marshall v Rosenberg, 196 AD3d 817, 818 [3d Dept 2021] [internal quotation marks and citations omitted]).
We first address the argument on which Supreme Court based its grant of summary judgment to defendants, namely the medical impossibility argument. Defendants supported their motion for summary judgment with expert affirmations by Gary A. Johnson — an emergency medicine physician — and David T. Stamer — an orthopedic surgeon — as well as deposition testimony and plaintiff's medical records. Within their affirmations, both experts state their opinions that plaintiff could not have had an undiagnosed and untreated staph infection for months without it "manifesting in significant and critically devastating ways" and that if a staph infection was "left untreated for several weeks, . . . [it] would have led to septic shock, and if it remained untreated, ultimately death." Thus, they conclude that plaintiff could not have contracted the infection by way of any treatment she received from defendants and, moreover, it was their opinion that plaintiff contracted it through "some outside non-related event" that occurred after the date of plaintiff's last treatment with defendants. Defendants argue that because the responding affirmation from plaintiff's expert failed to specifically address this allegation, the court properly granted summary judgment. We disagree. The allegations with reference to staph made by both of defendants' experts, as well as those speculating as to how and/or when plaintiff contracted the infection, are merely "conclusory assertions unsupported by any medical research" (Pullman v Silverman, 28 NY3d at 1063). As these are both speculative and conclusory assertions, they have no probative value and, as such, plaintiff had no obligation to rebut same (see id.; Rivera v Albany Med. Ctr. Hosp., 119 AD3d 1135, 1137 [3d Dept 2014]; Olinsky-Paul v Jaffe, 105 AD3d 1181, 1183 [3d Dept 2013]; LaFountain v Champlain Val. Physicians Hosp. Med. Ctr., 97 AD3d 1060, 1062 [3d Dept 2012]).
That said, we find that defendants did sustain their prima facie burden. Both experts averred that there were no departures from the accepted standards of care throughout defendants' treatment of plaintiff. Specifically, Stamer opined, within a reasonable degree of medical certainty, that the arthroscopic surgery on plaintiff's right knee was indicated based on the clinical presentation and the patient's history. Further, he opines that the failure to operate in the absence of an MRI was not a deviation from the standard of care and that the procedure was performed without complication[*3]. As to the subsequent appointments with Herzog, Stamer explicitly finds that Herzog's failure to aspirate plaintiff's knee at her September 2017 appointment was not a deviation from the standard of care, and that given her symptoms on presentation, plaintiff was appropriately assessed, evaluated and treated by Herzog at each appointment. Both physicians opine that there were no deviations in the standard of care as to the emergency room and family nurse practitioner visits and the medical records documented that plaintiff was appropriately assessed, evaluated and treated.
Thus, the burden shifted to plaintiff to present expert medical opinion evidence that there was a deviation and that this deviation proximately caused plaintiff's injuries (see Schwenzfeier v St. Peter's Health Partners, 213 AD3d 1077, 1080 [3d Dept 2023]). To that end, plaintiff submitted the affidavit of a board-certified orthopedic surgeon who stated that he had reviewed the depositions in the case, plaintiff's medical records and the affirmations of Stamer and Johnson. Having done so, plaintiff's expert opined, to a reasonable degree of medical certainty, that there were several departures from the standard of care in plaintiff's treatment and that said departures were a proximate cause of plaintiff's injuries. As pertinent here, the expert averred that it was his opinion that the infection was introduced at the initial surgery and that the failure to diagnose and treat her infection proximately caused plaintiff's injuries. Specifically, he found that given plaintiff's symptomology at her first postoperative visit, Herzog's failure to include infection in his differential diagnosis was a departure from the standard of care. He stated, "infection should [have] . . . be[en] presumed unless ruled out," and that Herzog's failure to aspirate plaintiff's knee to test for infection was a deviation from the accepted standard, and finally, that had this testing been performed at that time, the infection would have been detected. He goes on to cite several deviations with regard to this specific visit, including failing to prescribe antibiotics to plaintiff, as well as directing that her follow-up appointment be scheduled four weeks out, rather than having her return sooner.
Plaintiff's expert additionally details departures from the accepted standard of care that plaintiff received from the other defendants. With regard to plaintiff's postoperative emergency department treatment, the expert notes that when she went to the emergency department approximately one month after her knee surgery, she presented with 8/10 pain and a large joint effusion in her right knee. He describes plaintiff having similar symptoms when she presented to the emergency department approximately two weeks later. Under those facts, he avers that it was a departure from the standard of care to not suspect infection, aspirate the knee, perform blood work to test for infection and immediately contact Herzog. These [*4]departures, he states, were a proximate cause of plaintiff's injuries. Finally, plaintiff's expert opines that it was a departure of care for plaintiff's primary care provider, to whom plaintiff presented with severe pain and swelling, to continue to treat plaintiff's symptoms as RSD and to fail to aspirate the knee or perform other testing to rule out infection. Based on the conflicting expert proof, plaintiff raised triable issues of fact (see Bardaglio v Edward G. Bryant, IV, O.D., PLLC, 217 AD3d 1195, 1199 [3d Dept 2023]; Tardi v Casler-Bladek, 212 AD3d 904, 906 [3d Dept 2023]). Accordingly, defendants were not entitled to summary judgment. Moreover, in light of the foregoing, summary judgment is also not appropriate on the vicarious liability cause of action.
Egan Jr., J.P., Aarons, Pritzker and Mackey, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and motion denied.

Footnotes

Footnote 1: Plaintiff appeared at the Claxton-Hepburn Medical Center's emergency department in September 2017 on two occasions and at a physician's office on three occasions — once in September and twice in October.