Matney v Boyle (2025 NY Slip Op 02250)

Matney v Boyle

2025 NY Slip Op 02250

Decided on April 17, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 17, 2025

CV-24-0048
[*1]Thomas R. Matney et al., Appellants,
v
Sean P. Boyle et al., Respondents.

Calendar Date:February 11, 2025

Before:Garry, P.J., Aarons, Reynolds Fitzgerald, McShan and Mackey, JJ.

Harding Mazzotti, LLP, Albany (Peter P. Balouskas of counsel), for appellants.
O'Connor, O'Connor, Bresee & First, PC, Albany (Kathleen A. Barclay of counsel), for respondents.

Mackey, J.
Appeal from an order of the Supreme Court (Richard Kupferman, J.), entered January 2, 2024 in Saratoga County, which granted defendants' motion for summary judgment dismissing the complaint.
On February 21, 2020, plaintiff Thomas R. Matney underwent a laparoscopic sigmoid colectomy performed by defendant Sean P. Boyle, a surgeon, to treat his chronic sigmoid diverticulitis. During surgery, Boyle encountered severe inflammation in the affected area, prompting him to seek the assistance of another surgeon in using a laparoscopic gel port to complete the removal of a portion of Matney's colon. During the procedure, Boyle utilized a harmonic scalpel, an electrosurgical instrument, to cut and cauterize tissue. Several days following the surgery, while Matney remained in the hospital for observation, Boyle became concerned with his condition and ordered various diagnostic testing, which revealed a disruption of the distal right ureter. On February 29, 2020, Brian Yamada, a urologist, made an unsuccessful attempt to surgically correct the disruption, noting that Matney had sustained an "apparent thermal injury to the ureter." Matney thereafter underwent a series of unsuccessful surgeries to repair the damage and was ultimately discharged for further outpatient treatment. Matney and his spouse, derivatively, commenced this action against defendants for medical malpractice, among other causes of action, alleging that Boyle deviated from accepted standards of medical care in injuring his right ureter, failed to identify and address the injury during surgery, and failed to timely diagnose and properly treat the injury postoperatively. After discovery was completed, defendants moved for summary judgment, which motion plaintiffs opposed. Following oral argument, Supreme Court granted defendants' motion and dismissed the complaint. Plaintiffs appeal.[FN1]
"In a medical malpractice action, the plaintiff must show that the defendant deviated from acceptable medical practice, and that such deviation was a proximate cause of the plaintiff's injury" (Young v Sethi, 188 AD3d 1339, 1340 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 37 NY3d 902 [2021]; see Webb v Albany Med. Ctr., 151 AD3d 1435, 1436 [3d Dept 2017]). Accordingly, as the proponents for summary judgment, defendants bore the initial burden to establish that they "did not deviate from the accepted standards of practice in treating [Matney] or, if they did so, that such deviation was not the proximate cause of [his] injuries" (Launt v Lopasic, 189 AD3d 1740, 1742 [3d Dept 2020] [internal quotation marks, brackets and citation omitted]; see Scott v Santiago, 230 AD3d 933, 935 [3d Dept 2024]; Busch v Sherman, 209 AD3d 1230, 1231 [3d Dept 2022]).
In support of their motion, defendants presented the affirmation of general surgeon Robert Raniolo, who reviewed Matney's medical records as well as Boyle's surgical notes and deposition testimony. Raniolo opined that the injury to Matney's [*2]right ureter was caused by a "delayed thermal injury, which is a known risk" of the procedure. Although such injury may be the result of using an electrosurgical instrument, such as the harmonic scalpel used by Boyle here, Raniolo found that such use was appropriate under the accepted standard of care and that Boyle "did not cause direct injury" to the ureter during the surgery. He likewise concluded that, based upon intraoperative findings, Boyle appropriately converted the procedure to a hand-assisted laparoscopic surgery. Raniolo further opined that Boyle had also identified and protected the ureters during surgery according to the applicable standard of care, which "does not require intraoperative testing to rule out an injury [to the ureters] if there is no indication that a direct injury occurred during the procedure." Raniolo similarly found that, upon review of the relevant medical records, Matney's postoperative care and treatment did not deviate from the standard of care. The foregoing satisfied defendants' initial burden on summary judgement, thus shifting the burden to plaintiffs "to present expert medical opinion evidence that there was a deviation and that this deviation proximately caused [the] injur[y]" (Kelly v Herzog, 224 AD3d 1189, 1191-1192 [3d Dept 2024]; see Fischella v Saint Luke's Cornwall Hosp., 204 AD3d 1343, 1344 [3d Dept 2022]).
Plaintiffs came forward with the affirmation of surgeon Roberto Bergamaschi, who has significant experience with the type of surgery at issue, having "performed such surgery . . . countless times in [his] 30+ year career and hav[ing] taught proper surgical technique in performing such surgery." Bergamaschi opined that, based upon his review of the medical records and Boyle's deposition testimony, Matney suffered a thermal injury to his right ureter, which "could only have been caused by the harmonic scalpel Dr. Boyle was utilizing in the surgery." Although Bergamaschi agreed with Raniolo that Matney sustained a thermal injury to his ureter, he opined that it was most likely a "direct" rather than "delayed" thermal injury. He explained the difference: "[w]hile direct application of the harmonic scalpel to the ureter will cause direct injury, thermal spread occurs when the surgeon places the harmonic scalpel too close to sensitive tissue such as the ureter and for too long." Regardless of whether the thermal injury was direct or delayed, however, Bergamaschi opined that Boyle deviated from the standard of care in causing it, explaining that thermal injury to the right ureter is not a risk of the procedure Boyle performed "when proper surgical techniques are utilized." Bergamaschi found the location of the injury to be of great significance, as it is an area where the ureters are difficult to visualize — made even more difficult here where there was also severe inflammation. Under these circumstances, Bergamaschi opined that Boyle should have consulted with urology and considered converting to an [*3]open sigmoid colectomy "to provide better intraoperative visualization to better protect the ureter" and that his failure to do so constituted a deviation from the standard of care. Boyle having instead decided to proceed with a hand-assisted laparoscopic surgery, Bergamaschi opined that the applicable standard of care required him to not only visualize and protect the ureters throughout the surgery, but to also inspect them for injury prior to concluding the procedure. Boyle admitted at deposition that he did not inspect or test either ureter for injuries, in the area where the injury to the right ureter was later discovered, prior to concluding surgery. Based upon the foregoing, Bergamaschi opined that Boyle deviated from the applicable standard of care and that such deviation resulted in not only the injury to the right ureter, but also the failure to timely identify and treat the injury intraoperatively.
We disagree with Supreme Court's finding that plaintiffs' expert's affirmation was speculative or conclusory, inasmuch as he "addressed specific assertions made by defendants' expert[ ], set forth an explanation of the reasoning and relied on specifically cited evidence in the record" (Henderson v Takemoto, 223 AD3d 996, 1000 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]). "As has been frequently observed, a court's function on a motion for summary judgment is issue finding, not issue determination. Summary judgment is a drastic remedy which should not be granted where there is any doubt of the existence of a triable issue or where the issue is even arguable" (Hierro v Bliss Co., 145 AD2d 731, 732 [3d Dept 1988] [internal citations omitted]). Here, the parties' competing expert affirmations present triable issues of fact — namely, the proximate cause of the injury, as well as the applicable standard of care and whether there was a deviation therefrom. Accordingly, Supreme Court erred in granting defendants' motion for summary judgment dismissing the complaint (see Kelly v Herzog, 224 AD3d at 1192; Fischella v Saint Luke's Cornwall Hosp., 204 AD3d at 1344-1345; Schrader v Nichols, 198 AD3d 1153, 1155 [3d Dept 2021]).
Garry, P.J., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is modified, on the law, with costs to plaintiffs, by reversing so much thereof as granted that part of defendants' motion for summary judgment dismissing the first and fourth causes of action; motion denied to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: Plaintiffs' arguments on appeal are limited to the dismissal of their cause of action for medical malpractice and, accordingly, any potential claims related to the dismissal of their second and third causes of action for negligence and lack of informed consent are deemed abandoned (see Yerich v Bassett Healthcare Network, 176 AD3d 1359, 1361 n [3d Dept 2019]; Miazga v Assaf, 136 AD3d 1131, 1134 n 5 [3d Dept 2016], lv dismissed 27 NY3d 1078 [2016]).