Gillespie v Nathan Littauer Hosp. & Nursing Home

2026 NY Slip Op 02487

April 23, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Kimberly A. Gillespie, Individually and as Executor of the Estate of James D. Gillespie, Deceased, Respondent,

v

Nathan Littauer Hospital and Nursing Home et al., Appellants.

Decided and Entered:April 23, 2026

CV-24-2095

Calendar Date: February 9, 2026

Before: Clark, J.P., Reynolds Fitzgerald, Ceresia, Powers And Corcoran, JJ.

Burke, Scolamiero & Hurd, LLP, Albany (Monique B. McBride of counsel), for Nathan Littauer Hospital and Nursing Home and another, appellants.

Voute, Lohrfink, McAndrew & Meisner, LLP, White Plains (Michael N. Romano of counsel), for Trevor E. Black and another, appellants.

LaMarche Safranko Law PLLC, Cohoes (George E. LaMarche III of counsel), for respondent.

[*1]

Ceresia, J.

Appeal from an order of the Supreme Court (Richard Kupferman, J.), entered November 21, 2024 in Saratoga County, which denied defendants' motions for summary judgment dismissing the complaint.

On December 30, 2018, plaintiff and her husband, James D. Gillespie (hereinafter decedent), residents of New Jersey, were visiting family for the holidays in the City of Gloversville, Fulton County. Early that morning, decedent awakened plaintiff with a complaint of severe pain in his back on the upper left side and difficulty breathing. He was doubled over in pain and struggling to walk and talk. Plaintiff took decedent to the emergency room at defendant Nathan Littauer Hospital and Nursing Home. There, he was seen by defendant Trevor E. Black, a licensed physician employed by defendant Schumacher Group of New York, Inc. (hereinafter collectively referred to as the provider defendants), and two nurses. Black examined decedent and diagnosed him with pneumonia based upon a chest X-ray as well as decedent's report of pain and a recent cough. Black prescribed pain medication and an antibiotic and told decedent to return if the condition worsened. On January 3, 2019, after plaintiff and decedent had gone back to New Jersey, they were having a conversation when decedent's face suddenly went blank and he became sweaty and pale. Plaintiff called 911 and, while decedent was being transported by ambulance to a local hospital, he suffered a fatal heart attack.

Plaintiff subsequently brought this personal injury and wrongful death action sounding in medical malpractice against Nathan Littauer Hospital and Nursing Home and defendant Nathan Littauer Hospital Association (hereinafter collectively referred to as the hospital) and the provider defendants. According to plaintiff, Black and the nurses failed to take a complete medical history from decedent that would have disclosed risk factors for cardiac issues, neglected to properly recognize his symptoms and failed to order an electrocardiogram (hereinafter EKG) and a troponin test, which would have revealed a heart attack in progress on December 30, 2018. Following joinder of issue and discovery, the hospital and the provider defendants separately moved for summary judgment dismissing the complaint. Plaintiff opposed the motions, and Supreme Court denied them, finding that while defendants met their initial burdens of proof, plaintiff raised questions of material fact. Defendants appeal.

To prevail on a motion for summary judgment on a medical malpractice claim, a defendant bears "the initial burden of demonstrating that [it] did not deviate from accepted medical practice or that any such deviation was not a proximate cause of the claimed injuries" (Scott v Santiago, 230 AD3d 933, 935 [3d Dept 2024]; see Cho-Bodnar v Adirondack Maxillofacial Surgery, 215 AD3d 1101, 1102- 1103 [3d Dept 2023]). A defendant must "present factual proof, generally consisting of affidavits, deposition testimony and medical records, to rebut [*2]the claim of malpractice" (Marshall v Rosenberg, 196 AD3d 817, 818 [3d Dept 2021] [internal quotation marks and citations omitted]; see Cole v Champlain Val. Physicians' Hosp. Med. Ctr., 116 AD3d 1283, 1285 [3d Dept 2014]). To that end, defendants submitted, among other things, the deposition testimonies of Black, the two nurses and plaintiff; decedent's medical records; the hospital's nursing policy and procedure manual; and the affidavits of two experts Joseph Bove and Joel Bartfield, both licensed physicians board certified in emergency medicine.

Bove opined that Black did not depart from the standard of care in ruling out cardiac issues because decedent presented with musculoskeletal pain in his back that was reproduced when Black stimulated it by touch, unlike pain associated with an adverse cardiac event that is located in the front of the chest and cannot be reproduced through touching or palpating. The location and nature of this pain, along with decedent's normal heart rhythm and lack of other typical cardiac symptoms, allowed Black to properly rule out a cardiac event. According to Bove, even if an EKG and troponin test had been ordered, these would not have changed decedent's outcome because his heart attack four days later was acute, as evidenced by the EKG that was conducted in the ambulance shortly before he died. In Bartfield's view, the nurses acted in accordance with the standard of care and the hospital's policies and procedures by deferring to Black, who saw decedent within two minutes after he first encountered a nurse. This proof satisfied defendants' initial burden, such that it was then incumbent upon plaintiff to establish issues of fact as to whether there was a departure from accepted standards of care that proximately caused decedent's injuries (see Schultz v Albany Med. Ctr. Hosp., 238 AD3d 1286, 1288 [3d Dept 2025]; Sovocool v Cortland Regional Med. Ctr., 218 AD3d 947, 950 [3d Dept 2023]).

In that regard, plaintiff offered the expert affidavits of a board-certified cardiologist and an emergency physician. It was the opinion of the cardiologist that, based upon decedent's age of 53, his severe chest pain, his increasing shortness of breath and the absence of many of the symptoms of pneumonia, the standard of care under the circumstances required an EKG and bloodwork. According to the cardiologist, chest pain "means more than pain in the chest" and encompasses the back pain exhibited by decedent. The cardiologist stated that Black should have questioned why decedent's pain was only on the left side if pneumonia was suspected in both lungs. The emergency physician opined that the standard of care and hospital policy confirm that all patients presenting with possible cardiac-related chest pain should be assumed to be having a heart attack until proven otherwise, and the care provided by Black and the nurses did not meet those standards. This physician highlighted that, pursuant to the medical records and deposition testimony[*3], decedent had high cholesterol and his father had suffered a heart attack at age 51. Nevertheless, a complete personal and family medical history was not taken. As for the issue of proximate cause, the cardiologist noted that the EKG conducted on January 3, 2019 revealed Q waves, showing that decedent had suffered a previous heart attack. The cardiologist considered this evidence in conjunction with decedent's age and the physical symptoms that he was experiencing on December 30, 2018 and opined, to a reasonable degree of medical certainty, that decedent was suffering a heart attack on that date and that proper care would have saved his life. The foregoing proof was sufficient to meet plaintiff's shifted burden of demonstrating material factual questions as to a divergence from accepted medical standards as well as proximate causation (see Matney v Boyle, 237 AD3d 1382, 1385 [3d Dept 2025]; Lubrano-Birken v Ellis Hosp., 229 AD3d 873, 878-879 [3d Dept 2024]; McCarthy v Town of Massena, 218 AD3d 1082, 1090-1091 [3d Dept 2023]; Kielb v Bascara, 217 AD3d 756, 757 [2d Dept 2023]).

Finally, defendants claim that plaintiff impermissibly raised a new theory of recovery in opposition to summary judgment. More specifically, recognizing that the complaint referenced "left sided chest pain" and the bills of particulars mentioned "pain from jaw to umbilicus," it is defendants' position that plaintiff's expert cardiologist improperly expanded the definition of chest pain by indicating that this term includes pain in both the front and the back of the torso. We disagree. The cardiologist's explanation was neither contrary to nor inconsistent with that which had been pleaded in the complaint and bills of particulars (compare Fasce v Catskill Regional Med. Ctr., 209 AD3d 1138, 1139-1140 [3d Dept 2022]; Darrisaw v Strong Mem. Hosp., 74 AD3d 1769, 1770 [4th Dept 2010], affd 16 NY3d 729 [2011]). Under these circumstances, we cannot say that plaintiff raised a theory that was new or materially different from that previously pleaded (see Henderson v Takemoto, 223 AD3d 996, 1001 [3d Dept 2024]; compare Valette v Correa, 216 AD3d 500, 500 [1st Dept 2023]).

Clark, J.P., Reynolds Fitzgerald, Powers and Corcoran, JJ., concur.

ORDERED that the order is affirmed, with costs.